GAYLE'S HEIRS *vs.* WILLIAMS'S ADMINISTRATOR.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF EAST BATON ROUGE.

The neglect or omission to record a judgment within *ten days* after its rendition, under the recording act of March 26, 1813, does not render it a nullity, so as to prevent its having the effect of a legal mortgage, from the date of its registry, when recorded after the lapse of ten days.

Statutes in *pari materia* should be construed together, in order to ascertain the meaning of the legislator.

Prior laws are not repealed by subsequent ones, unless by positive enactment, or clear repugnancy in their respective provisions.

*Robert Jones,* the administrator of the succession of Doctor William Williams, filed his petition, with a tableau of distribution, of the effects of the succession administered, as an insolvent one : he alleges, that the heirs of said succession are minors, and reside out of the state, and prays that a curator *ad hoc* be appointed to represent them ; that Eliza Williams, the widow of the deceased, and residing in the parish, be served with a copy of the petition and citation, and that ten days notice be given, to all whom it may concern, to show cause and make opposition ; and in default thereof, that he be allowed to proceed to the payment of the widow and creditors, according to the tableau.

The judge of Probates ordered the appointment of the curator *ad hoc,* and citations and notices, to issue and be served and published.

The administrator set down the net amount of the estate, at two thousand four hundred and seventy-three dollars ninety cents, and allowed the widow in community, one-half thereof, in separate property. The other half, with two sums added, for moneys received on account of sales of husband's property, and a debt due him, amounted to three thousand two hundred and eighty-seven dollars seventy-five cents.

The claims put down as previleged and secured by judicial mortgages are, first heirs of Ann Jones, deceased, for amount

of principal and interest, six thousand four hundred and <span style="float:right"></span> nineteen dollars fifteen cents, which exhausts the succession <span style="float:right"></span> by one thousand seven hundred and seventy-four dollars <span style="float:right"></span> eighty-six cents. <span style="float:right"></span>

Next comes a judgment of the heirs of Gayle, for one thousand eight hundred and fifty dollars, after deducting a medical bill, and secured by a judicial mortgage.

The heirs of Gayle made opposition to the tableau, and denied the right of the widow, to take half of the community of acquests and gains, and prayed that her claim be rejected.

They next oppose the claim of the heirs of Mrs. Ann Jones, as privileged. They allege that their claim has the highest privilege, and should be placed first on the tableau, as being supported by a judicial mortgage on all the estate of the deceased: they pray that the tableau be amended, according to the facts set out in their opposition, and that they be placed first, and their claims allowed accordingly.

An agreement was made between the parties, that the contestation of claims, be restricted to that between the heirs of Gayle, and the heirs of Ann Jones, relative to the right of preference.

The heirs of Ann Jones support their claim, by four judgments, obtained against the deceased in his life-time, and recorded on the first of August, 1820. There was another judgment rendered in June, 1821, but was never recorded.

The heirs of Gayle obtained judgment for part of their claim, 30th June, 1823, recorded the 8th July following, for the sum of seven hundred and twenty dollars; the remainder. is not shown to be entitled to any privilege.

The probate judge, in rendering judgment, states, "that the heirs of Mrs. Jones, recovered five judgments against the deceased, four of which were recorded on the 1st August, 1820, and will more than exhaust the separate estate of the deceased. It also appears that the heirs of Gayle, on the 30th June, 1823, recovered a judgment against the deceased, for one thousand one hundred and twenty dollars, with interest, which was recorded on the 8th July, 1823. It is contended on the part of Gayle's heirs, that the judgment of the heirs of

WESTERN DIST.
August, 1834.

GAYLE'S HEIRS
vs.
WILLIAMS'S AD'R
Jones, not having been recorded in ten days from the rendition thereof, under the act of 1813, are null and void, as regards those having recorded their judgment in due time; and that they have a superior mortgage, which entitles them to be paid in preference." The judge overruled the opposition, and sustained the claims of Jones's heirs, according to its rank and privilege as placed on the tableau. The heirs of Gayle appealed.

The clause of the recording act of 1813, on which the appellants rely, is as follows: " *All final judgments* and awards of arbitrators, confirmed by the judgment, &c., of a court of competent jurisdiction, *shall within ten days after such judgment is rendered, be recorded,* in the manner prescribed by law, &c." 2 *Moreau's Digest,* 287.

*T. G. Morgan,* for Gayle's heirs, and the appellants, contended, that as Jones's heirs had not recorded their judgment, within the ten days required by the act of 1813, they had lost their privilege; that Gayle's heirs, having recorded theirs within the time required, were entitled to the preference.

*Bradford, contra.*

*Bullard, J.,* delivered the opinion of the court.

The administrator of the estate of W. Williams, put down on the tableau of distribution, the heirs of Jones, the appellees, as mortgage creditors, in virtue of certain judgments recorded against the intestate, in 1819 and 1820, which were not recorded within the ten days after their rendition. The heirs of Gayle, who had also obtained a judgment, which was recorded within the delay of ten days, in 1823, but after the former judgments had been recorded, opposed the homologation of the tableau, on the ground, that the judgments in favor of Jones, were null and void, except between the parties, because not recorded within the delay prescribed by the act of 1813; that they could produce no effect as to them, whose judgment was duly recorded, according to the

statute. The words of the statute are, "all sureties, sales, contracts, judgments, sentences and decrees aforesaid, and all liens of any nature whatever, having the effect of a legal mortgage, which shall not be recorded agreeably to the provisions of this act, shall be utterly null and void, to all intents and purposes, except between the parties thereto."

The case therefore presents directly the question, whether the neglect to record a judgment within ten days after its rendition, struck it with such radical and absolute nullity, as that it could not produce, when registered afterwards, the effect of a judicial mortgage, as against those, who had no interest, and no right at the time of the registry. The judgment of the opposing creditor, was not recorded, until nearly three years after those of the heirs of Jones, nor does it appear, that the debt existed at the time. The judicial mortgage of the heirs of Gayle, dates from the 8th of July, 1823, and the four judgments in favor of the heirs of Jones, were recorded on the 1st August, 1820.

*The neglect or omission to record a judgement within ten days after its rendition, under the recording act of March 26th, 1813, does not render it a nullity, so as to prevent its having the effect of a legal mortgage from the date of its registry, when recorded after the lapse of ten days.*

In giving a construction to this statute, it is contended, that we are bound to give full effect to the will of the Legislature, according to its literal import, when expressed in clear and unambiguous terms. But the third section of the act, furnishes us a clue, which would seem to lead to a different conclusion. It is there said, that "the formality of recording, prescribed by this act, being required solely for the *benefit and information* of the public, the want thereof shall in no wise be prejudicial to the interests of minors, persons insane, or any absent heirs of the estate of a person deceased," &c. Publicity is here announced to be the sole object and purpose of the registry. Notice to third persons, is the principal object of all laws, providing for registry. The old Civil Code, in force at that time, establishes the same principle in more distinct terms. "Though it is a rule, that the conventional mortgage is acquired by the sole consent of the parties, and the judicial and legal mortgages, by the judgment or law which grants it, nevertheless in order to protect the good faith of third persons, who may be ignorant of such covenants, and to prevent fraud, the law directs, that the conventional and judicial

WESTERN DIST.
August, 1834.

GAYLE'S HEIRS
vs.
WILLIAMS'S AD'R

Statutes in pa-
ri materia should
be construed to-
gether, in order
to ascertain the
meaning of the
legislator.
Prior laws are
not repealed by
subsequent ones,
unless by posi-
tive enactment
or clear repug-
nancy in their
respective pro-
visions.

mortgages, shall be recorded or entered in a public folio book, kept for that purpose," &c.    *Civil Code, p. 464. art. 52.*

We believe it to be an incontrovertible principle, that all statutes in *pari materia*, should be construed together, in order to ascertain the meaning of the legislator; and that prior laws are not repealed by subsequent ones, unless by positive enactment, or clear repugnancy in their respective provisions.    The old Civil Code required, that judgments should be recorded.    The 14th article, page 454, declares in negative terms, that "conventional or judicial mortgages cannot operate against a third person, except from the day of their being entered, in the office of the register of mortgages."

We cannot fairly infer, from these different provisions taken together, that the legislature intended to prohibit, under pain of absolute nullity, the recording of a judgment, after the delay of ten days.    It would produce no effect, as a mortgage in relation to persons, who in the interval between its rendition and its record, had acquired any right, which might be affected by it, but as the sole object of registry is declared by the statute to be, to give notice, and to prevent frauds, if we were to pronounce the nullity of the recording, we should carry the statute beyond the declared intention of the legislature.    We should make it operate, not for the protection of third persons, having an interest at the time, but as conferring an advantage, on those who were at the time without any interest or right whatever, and who had notice of the existence of the previous judgments.

This court recognised the same principle, substantially, in the case of Morrison et als. *vs.* Trudeau.    1 *Martin, N. S.* 384, in relation to the vendor's previlege.    The question in the case of Jenkins *vs.* Nelson's syndics, was between the plaintiff and creditors of an insolvent, in relation to a contract for building, not recorded according to the statute.    The point now under consideration, did not present itself; and in the previous case of Lafon *vs.* Sadler, the only question was, whether a written contract was essential to create the builder's privilege.    11 *Martin,* 437.    4 *Martin,* 476.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.