ST. PAUL, Judge ad hoc.
Page M. Baker died in the city of New Orleans on May 2S, 1910, leaving a widow in community and one child, the issue of his marriage with her. By his will he bequeathed to his widow all of the disposable portion of his estate, and the usufruct of the balance. She was also appointed executrix under the will.
The executrix qualified in due course, and an inventory was taken. It showed a con *77 siderable estate comprising both community and separate property.
Thereupon a rule was taken by the executrix in accordance with law to fix the amount of the inheritance tax that might be due.
It was admitted that the tax was due on such part of the estate as devolved on the child; but the executrix contended that she owed no tax on that portion coming to herself, claiming that “she does not fall within any of the classes of persons subjected by law to the tax.”
There was judgment in the court a qua upholding this contention, and from that judgment tjie collector of taxes has appealed.
The chief and practically sole issue presented is the interpretation of Act No. 109 of 1906. That act is entitled and reads as follows:
“An act to carry into effect articles 235 and 236 of the Constitution, and to levy taxes, solely for the support of the public schools, on all inheritances, legacies and other donations mortis causa; to provide exemptions therefrom. ^ * *
“Section 1. Be it enacted * * * that there is now and shall hereafter be levied, solely for the support of the public schools, on all inheritances, legacies and other donations mortis causa to or in favor of the direct descendants or ascendants of the decedent, a tax of two per centum; and on all such inheritances or dispositions to or in favor of the collateral relations of the deceased, or strangers, a tax of five per centum on the amount or the actual cash value thereof, at the time of the death of the decedent.”
Note. — The next section provides for certain exemptions which are the same as those provided for in the constitutional articles hereinafter mentioned. The other sections and the portions of the title omitted relate only to the method of collecting the tax.
This act superseded and replaced a prior act, on the same subject, Act No. 45 of 1904, entitled and reading as follows:
“An act, to carry into effect articles 235 and 236 of the Constitution of 1898, relative to inheritance taxes.
“Section 1. Be it enacted * * * that there is now and shall hereafter be levied, solely for the support of the public schools, a tax upon all inheritances, legacies and donations, provided; * * * a special inheritance tax of three per cent, on direct inheritances and donations to ascendants or descendants, and ten per cent, for collateral inheritances and donations to col-laterals or strangers; provided. * * * ”
Note. — The portions omitted relate to the exemptions provided for in the Constitution; and the other sections of the act relate only to the method of collecting the tax.
Both of these statutes were passed under express constitutional authority, to wit, articles 235 and 236 of the Constitution of 1898, reading as follows:
“Art. 235: The Legislature shall have power to levy, solely for the support of the public schools, a tax upon all inheritances, legacies and donations, provided no direct inheritance or donation to an ascendant or descendant, below ten thousand dollars in amount or value shall be so taxed; provided further that no such tax shall exceed three per cent, for direct inheritance and donations to ascendants and descendants, and ten per cent, for collateral inheritances and donations to collaterals or strangers; provided bequests to educational, religious or charitable institutions shall be exempt from this tax.
“Art. 236. The tax provided for in the preceding article shall not be enforced when the property donated or inherited shall have borne its just proportion of taxes prior to the time of such donation, or inheritance.”
The widow comes within none of the exemptions above mentioned, and her claim is not founded on those grounds. Her contention is based on the claim that, being neither a relation nor a stranger to her husband, she does not fall within any of the classes taxed under the law. As there were no ties of consanguinity between herself and her deceased husband, she is clearly neither an ascendant, nor a descendant, nor a collateral relation, and the question is therefore presented whether or not she is a stranger within the meaning of the statute.
1. At the very outset of the inquiry, it may be well to observe several points in connection with the statute under consideration: (1) That neither husband nor wife is even so much as mentioned eo nomine in *79 the statute. Necessarily therefore the statute draws no distinction between the two spouses, and, since the law makes no distinction, neither can the court. Both spouses are liable for the tax, or neither; (2) that the relations mentioned in the statute are the legitimate relations only, for the law recognizes no other kind of relationship. Those who are illegitimate belong to no family and have no relations, even though legally acknowledged (Civ. Code, art. 238); (3) that the statute levies no tax on natural children, natural parents, etc., eo nomine; (4) that the statute draws no distinction between testate and intestate successions. The tax is levied on the inheritance and graded according to the status of the person benefited, not according to the title by which such person may come to the inheritance.
2. It may be conceded that, generally speaking, one would not apply the term “stranger” to the wife of his bosom and companion of his joys and sorrows, the mother of his children, and partner in his estate. Neither is the term at all more applicable, generally speaking, to a natural child, through whose veins once coursed the very blood from its mother’s heart, whose very sustenance was once drawn at her breast. One would hardly apply the term to a close connection by affinity, to whom all the world, and the law itself, applies such endearing terms as father, mother, son, daughter, brother, and sister. Strangers are not called in “family meetings” but a brother-in-law must be called before a friend, or even an uncle or first cousin. Oiv. Code, arts. 281, 282. It would be absurd to require a judge to recuse himself when a mere stranger is a litigant before him; but a judge must recuse himself if his father-in-law, son-in-law, brother-in-law, etc., be one of the parties. Code Prac. art. 339. Members of one’s family are not strangers (generally speaking), but servants are members of the family. Civ. Code, art. 3556, subd. 12. The law itself observes a distinction between servants and strangers (Civ. Code, art. 2967); just as it does between citizens and strangers (Civ. Code, art. 1490), or between relations and strangers, or a wife and strangers (Civ. Code, arts. 48, 391, 1735, 2341).
Generalities, therefore, will throw no light on the question before us. Otherwise we would have more persons exempt from the tax than liable to it. The word “stranger” in the statute would soon become mere surplusage, applicable only to those of whom the testator had perhaps never heard, and to whom he was therefore not likely to leave his estate.
Nor can much light be drawn from law dictionaries, encyclopedias, and text-books. In law the word “stranger” is generally used with an adjunct, as “stranger to the deed, or to the record,” or “stranger to the blood.” When used alone, it is generally in the first sense, viz., one who is neither a party, nor privy, to an act, deed or record, just as our Code uses the term “third person.” Civ. Code, art. 3556, subd. 32. Hence “strangers are third persons generally; all persons in the world who are not parties.” Balfour v. Burnett, 28 Or. 72, 41 Pac. 1. See, also, Bouvier, Webster, The Century, Verbo, “Stranger”; 2 Blackstone, Com. 356; 7 Words and Phrases, pp. 6680, 6681; 36 Cyc. pp. 1332, 1333; 26 Am. & Eng. Encyc. of Law (2d Ed.) p. 1127.
In this sense the wife is distinctly a stranger with respect to her husband. Shreveport National Bank v. Maples, 119 La. 41, 43 South. 905. But it is clear the word was not used in this sense in the statute under consideration.
As to the term “stranger in law,” advanced at the argument, it seems to be wholly unknown. A long and painstaking search fails to disclose that the term has ever been used on any former occasion.
*81 Still less help can be had from the language dictionaries. The Century gives a number of common definitions, but of these only one is deserving of any attention, viz., “Not of the household.” But the adoption of this definition would lead to conclusions clearly not in the contemplation of the lawmaker. Servants, apprentices, and companions, living intra moenia, are distinctly “of the household”; so, also, are one’s mother-in-law, son-in-law, and daughter-in-law, when they reside with him. On the other hand, if the wife should refuse to follow her husband, or to reside with him, she could scarcely claim to be “of his household.” But the lawmaker surely did not intend that the status of the heir or his liability to a tax should depend upon temporary arrangements or mere accident or caprice.
3. It is therefore useless to seek further along these lines for the solution of the question which lies before us. But there are certain fixed and well-considered rules laid down for the interpretation of statutes, which, if followed, generally result in reaching the true legislative intent more nearly and more readily than would usually be possible by proceeding along some independent line of research.
The first rule is that the words of a law are generally to be understood in their most usual signification, and according to the general and popular use of the words. Civ. Code, art. 14.
[1] It will be observed that the rule ordains no more than that this shall generally be done, not always, however, for that may be impossible or lead to conclusions which the legislator never contemplated. Such is the case before the court; and it has been the endeavor in what has preceded to show these two things: (1) That the most usual signification of the word “stranger,” as a legal term, is wholly inapplicable in this statute; and (2) that, according to the popular usage, the word is so vague, general, and elastic as to preclude entirely the idea that the Legislature ever contemplated that it should be taken in that sense with all the mischievous consequences that would flow from the use of the word in that loose,- indefinite, and uncertain manner.
[2] Another rule of construction is that laid down in article 16 of the Civil Code. Words of dubious meaning should be compared with the rest of the enactment. The rule is the same which is so tersely laid down in the maxim, “Noscitur a soeiis.”
Now, the only words of the context with which the word “stranger” can at all be compared is the word “relations.” [9] Comparison, however, is the act of bringing together for the purpose of observing not only likenesses, but differences as well. A familiar mode of comparison is the contrast.
In fact, when we consider that the word “stranger” comes almost directly from the Latin “extra,” meaning beyond or outside, and if we observe all the common and legal definitions and uses of the word, we cannot fail to realize that it has only the same value in expressing thought as its Anglo-Saxon counterpart, the word “outsider.” And the most effectual way in which to ascertain its exact meaning, wherever used, is to contrast it with some other word in the text of known and fixed meaning.
Again, the word “strangers,” when used following other designations of persons, is generally intended to exhaust the whole category of persons within the range of the subject under discussion not included in the terms which preceded it; and has the same meaning as if it read “all other persons.” This is especially true with regard to statutes. Not to multiply examples, our own Civil Code uses the word in that way no less than five different times. See Civ. Code, arts. 48, 391, 1735, 2341, 2967.
Hence, when in a statute levying a tax *83 we find the word “strangers’-’ following close upon the words “ascendants,” “descendants,” and “collateral relations” (all taxed), the conclusion is forced upon us that the word was used and meant as a complement to the words by which it was preceded.
It is another rule of construction that laws on the same subject must be read together. What is clear in one statute may be called in aid to explain what is. doubtful in another. Civ. Code, art. 17.
The statute under consideration having been enacted under express authority of articles 235 and 236 of the Constitution of 1898, and making use of the very terms employed in those articles, the presumption is that they were also used in the same sense. The articles authorize a tax on all inheritances, except those specially exempted; but they limit the rate of taxation only with regard to relations and strangers. Since husband and wife, as such, are not relations, it follows that, unless they be “strangers” within the meaning of the article, there is then no limit to the legislative power to tax an inheritance falling to a surviving spouse. This does not appear to have been the intention of the convention, if any regard is to be paid to what it did in other matters; for, in whatever related to taxation, the convention followed consistently the dominant idea which controlled its predecessor of 1879 (the fruit of bitter experience) and limited in every instance where it was possible to do so the power of taxation some time spoken of as “the power to destroy.”
If, therefore, that power was left untrammeled in this one instance, it must have been owing to some gross oversight on the part of the convention; for it is inconceivable that it should deliberately have singled out, as the sole objects for unlimited taxation, the unfortunate widow, and the husband by whom, as a general rule, the estate which he inherits, has actually been accumulated.
But courts will not lightly assume that lawmakers have proceeded carelessly or by inadvertence; so, where the words of a law are ambiguous aud admit of two interpretations, one of which, if accepted, would convict the lawmaker of carelessness, or inadvertence, whilst the other would be wholly consistent with the wisdom and prudence that ought to characterize the acts of every sovereign authority, it is the duty of those charged with interpreting such acts to adopt the latter and reject the former of these two interpretations.
The statute of 1904 was superseded by that of 1906, but it is a law in pari materia, and may therefore be consulted to ascertain the meaning of such words as are used in both statutes.
In Rex v. Loxdale, 1 Burrow, 447 (97 Eng. Reprint, 395), 'Lord Mansfield used this language:
“Where there are different statutes in pari materia, though made at different times or even expired they shall be taken and construed together as one system and explanatory of each other.”
This language was quoted and follows in Ex parte Copeland, 42 English Reprint, 1129, 1130, and in Southern Ry. Co. v. McNeill, (C. C.) 155 Fed. 757, 773. The same principle has repeatedly been laid down by different high courts in the United States, notably in Church v. Crocker, 3 Mass. 17, and Forqueran v. Donnally, 7 W. Va. 114, 137. And this court has three times proceeded on that principle. See Lyon v. Fisk, 1 La. Ann. 444; Gayle v. Williams, 7 La. 162; Vidal v. Commagere, 13 La. Ann. 516.
But the statute of 1904 clearly uses the term “stranger” as including all persons who are not ascendants, descendants, or collateral relations. The language of the statute has heretofore been given in full and shows that the text itself levies in so many words a tax on all inheritances whilst the rate is fixed at 3 per cent, for ascendants and descend *85 ants, and 10 per cent, for collateral relations or strangers. Here the word “strangers” was unmistakably intended as the complement of the terms which preceded it, and was meant to apply to all who did not come within their meaning, thereby filling the hiatus that otherwise would exist in the statute.
The “most effectual way” of discovering the true meaning of a law, says Civ. Code, art. 18, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it; that is to say, by looking into the purpose of the statute.
But the purpose, subject, or object of a statute are all one and the same thing. See the use of these words interchangeably in Sutherland on Statutory Construction (2d Ed.) pp. 221, 222, and in State ex rel. Wynne v. Judge, 106 La. 400, 31 South. 14.
The Constitution (article 31) requires that the object of every statute shall be expressed in its title. It is manifest, however, that the text of a statute cannot be enlarged by resorting to the title. Reynolds v. Baldwin, 1 La. Ann. 162; State v. Cazeau, 8 La. Ann. 114. [5] But, “the title of an act may assist in removing ambiguities when the intent is not plain.” State v. Bolden, 107 La. 116, 31 South. 393, 90 Am. St. Rep. 280, citing United States v. Fisher, 2 Cranch, 358, 2 L. Ed. 304, and Burgett’s Lessee v. Burgett, 1 Ohio, 469, 13 Am. Dec. 634. See, also, Forman v. Sewerage and Water Board, 119 La. 49, 43 South. 908.
[6] The title of the statute under consideration has already been given, and shows that the purpose therein expressed was to tax all inheritances. The text, however, heretofore quoted, is substantially in these words:
“There is hereby levied on all inheritances falling to ascendants and descendants, a tax of two per centum; and on all such inheritances falling to collateral relations or strangers, a tax of five per centum.”
[7] If, then, the word “strangers” is capable of such an interpretation as will accomplish the expressed purpose of the statute, is it not the presumption that the word was used in that sense and no other? Grant that the legislative purpose has been clearly stated, and that words are used capable of an interpretation which, if adopted, will suffice to carry out that purpose, must not the courts adopt such interpretation, rather than some other which must result in nullifying in part at least the legislative purpose? “Ut res magis valeat quam pereat.”
In what has gone before it has been the endeavor to show that the legislative purpose has been stated in the title unmistakably; that the words of the text are at least capable of such interpretation as will suffice to carry out that purpose. The success or failure of this endeavor must speak for itself; but the issue must be decided.
The word “strangers” within the meaning of the statute under consideration, was intended to exhaust the whole category of persons who might be called to the inheritance, whether by will or ab intestato, and applies to all who have not in fact (or by law) the status of legitimate ascendants, descendants, and collateral relations.
4. The appellee urges that, as the tax which the state herein seeks to impose upon her is a special tax, any doubt that may exist must be resolved in her favor, and her counsel cites numerous authorities bearing on that point. Granted that the tax is a special one, and granted that as to special taxes the citizen is in a more favored position then when the tax is a general one, there is, however, a reason for it. When the tax is- general, the presumption is that the legislator intended to tax all persons, and he who would claim exemption must point out clearly the legislative intent that he should not be taxed. But the reverse is true when the tax is a special one. Then the presumption is that the legislator intended to tax only the persons expressly designated as the object of the tax. *87 It then devolves upon the fisc to point out clearly, that he whom it seeks to tax is among those persons.
Now, the maxim, “Cessante ratione legis, cessat et ipsa lex,” is especially true of rules grown up in jurisprudence. These rules are binding by authority of reason, rather than by reason of authority. Hence, when the reason ceases, so also does the rule.
But in the statute under consideration the purpose of the legislator to tax all inheritances, as shown by the title, is clear. Whatever doubt exists is as to the text; whether that is as broad as the purpose announced in the title, and will suffice to give effect to that purpose. In that respect the presumption is all in favor of the statute.
Thus:
“It has been repeatedly said that the presumption is, that every statute, the object and provision of which are among the acknowledged powers of legislation, is valid and constitutional, and such presumption is not to be overcome unless the contrary is clearly demonstrated.” Duffy v. City, 49 La. Ann. 115, 21 South. 179.
And the reason is this: That the three branches of government are co-ordinate and equal. Each has separate powers, but is alone and supreme in its own sphere. They, are all three, however, only the servants of a common master, the state. Hence, as long as any one department confines itself within the scope of its powers, and does not attempt to exceed the bounds of its legitimate authority, it is the duty of the other co-ordinate branches of the government to lend all the aid consistent with a just regard for duty.
But if the presumption is in favor of the whole statute, and in order to give effect to the whole, then it is equally in favor of each and every part of the statute, for the reason of the rule is just as applicable in the one case as in the other. The legislative intent being once known, it must be given effect if possible.
5. The appellee further urges that this court has already announced views which under her interpretation would be at variance with those hereinbefore expressed. The reference is entirely to the decision in Succession of Frigalo, 123 La. 71, 48 South. 652, and. the contention is based, principally, if not wholly, on 'the following expression taken from the body of the opinion, viz.:
“On the other hand, as they are legal heirs of the decedent, it is clear that they are not strangers to her estate.”
And in the syllabus, prepared by the organ of the court, this language is used, viz.:
“As they inherit under the law, they are not strangers to the estate.”
As will be observed, the syllabus might seem somewhat broader than the opinion. In its analysis, however, it is clearly not so. Even the expression in the body of the opinion, if taken alone, might appear to go somewhat beyond the question then before the court, which is thus stated in the opinion, viz.:
“Are inheritances of less than $10,000 falling to adopted children liable to an inheritance tax?”
In that case the adopted children were not related by consanguinity to the person from whom they inherited.
The district judge seems to have held that as they were neither ascendants or descendants, nor collateral relations, they must be strangers. It may be that the judge overlooked the provisions of article 214 of the Civil Code, reading in part as follows:
“The person adopted shall have all the rights of a legitimate child in the estate of the person adopting, except,” etc.
But in the light of that article the reasoning of this court would seem to he conclusive. Said the court (123 La. at page 74, 48 South. at page 653):
“It will be observed that in the exercise of the power conferred upon it, and to give effect to the two articles of the Constitution here in question, the Legislature has levied a tax upon inheritances falling to four classes of persons, viz., ascendants, descendants, collaterals, and . *89 strangers; the exemptions provided by the Constitution (including that of less than $10,000, falling to ascendants or descendants) being duly provided for. It is admitted, as we have seen, that the contestants now before the court were not related by blood to the decedent from whom they inherit, so that they are neither ascendants nor collaterals. On the other hand, as they are legal heirs of the decedent, it is clear that they are not strangers to her estate. It follows, therefore, that, if the inheritance here in question falls within the operation of the law upon which the state relies, it must be as an inheritance falling to persons who by law (Rev. Civ. Code, art. 214) are given the status of descendants. But, as thus classified, the inheritance is not liable to the tax, because it is of less value than $10,000.”
If, then, we reduce to their ultimate analysis the question asked and answer given, they are about as follows:- Can an adopted ■child be taxed as a stranger? And the answer: He cannot because the law gives him the status of a legitimate child; and hence he can be taxed, if at all, only as a descendant.
The question of nonliability in every event was neither presented nor decided. It could not have been unless the inheritance exceeded $10,000. Had it exceeded that sum, the decision must have been: He is liable as a descendant. Any other solution would not have been giving him “all the rights of a legitimate child.” To exempt him altogether would have been giving him more rights, greater rights, than a legitimate child; since the legitimate children must pay the tax when the inheritance exceeds $10,000.
As to the above-mentioned expressions, they must not be seized upon and isolated, as it were, but should he taken in connection with the matter before the court. Taken thus, the expression “as they inherit under the law” meant nothing else than “as they are the legal heirs of the decedent”; and this, in turn, meant simply that they were “persons who by law are given the status of descendants.” And it follows with the certainty of a mathematical demonstration that, of course, they could not be classed as strangers, but must be classed as descendants. True, the opinion uses the phrase “strangers to the estate”; but the true meaning of a decision cannot be attained by holding tenaciously to the form or expression thereof. The maxim “Scire leges, non hoc est verba earum tenere, sed vim ae potestad tem,” holds as true of jurisprudence as of law. At any rate, there are other words in the opinion tending to show that judgment was at least partially reserved on this point; for the court used the words, “if the inheritance here in question falls within the operation of the law,” almost at the very end of the opinion. But in any event the court did not hold, and it was not necessary to hold, that the mere fact that one was called to the inheritance by law took him out of the class of strangers intended by the statute; for, if that were true, then the inevitable result would be that the natural child, the natural parent, the natural brother and sister, all of whom are called by law to the succession as irregular heirs (Civ. Code, arts. 918, 919, 922, 923), would be in a more favored class as to this inheritance tax than the legitimate child, the legitimate parent, and the legitimate brother and sister, for the latter and not the former are the ascendants, descendants, and collateral relations whom the statute does tax. Those who are illegitimate are not included in such designations, for they belong to no family and have no relations (Civ. 'Code, arts. 238, 3556, subd. 8); and, since relationship is reciprocal, those who have no relations cannot themselves be related to others. The Legislature never so intended it. To have done so deliberately were unpardonable, and inadvertence had been no excuse.
As to the husband, he at least is even more of a stranger than the natural child; for the latter excludes him from the succession of his natural mother. Civ. Code, art. 918. And, since the statute draws no distinction *91 between spouses, neither can the court. “Ubi lex non distinguit, nec nos distinguere debemus.”
On the other hand, if we eliminate entirely all question of natural children, natural parents, and natural brothers and sisters, or class them as descendants, ascendants, and collateral relations, or on account of their peculiar position class them as strangers, notwithstanding their being called by law to the inheritance, thereby putting husbands and wives in a class by themselves, the result would be this, that they alone would be not subject to the tax under the statute, but subject to unlimited taxation under the Constitution. Such an interpretation would be unfortunate; for substantial rights of a permanent character would be given up against mere temporary inconvenience. The statute may be changed at any time, but the Constitution is more permanent.
If the interpretation herein given be not the true one, there is nothing that hinders the Legislature from declaring at any time its purpose not to levy a tax upon surviving husbands and wives. On the other hand, if the interpretation contended for by the appellee be true, then also there is nothing that prevents the Legislature from levying upon husbands and wives any amount it may see fit to levy in excess of 10 per cent. That the Legislature is not likely to do so would no more be an argument herein than the question: Had it already done so, what then?
But this court has never held that the status of a beneficiary depended solely upon the fact of inheritance vel non; and this is completely negatived by the fact that the constitutional articles above referred to authorize a tax on all donations without distinction, and therefore inter vivos as well as mortis causa.
This was not the result of mere accident, but was ex industria as shown by the Journal of the Convention of 1898, particularly at page 258 (Pr. 2, 3, 4). In some way not accounted for by the Journal, the words “inter vivos and mortis causa” have disappeared from the final draft of the articles as they now appear in the Constitution. This, however, was doubtless the act of the committee on style and revision, since it changes in no way the meaning of the articles as they passed the convention, whilst the flow of the language was thereby somewhat improved.
6. The widow is therefore liable for an inheritance tax. But she is liable for the same only on that part of the estate which comes to her by inheritance, to wit, two thirds of the separate property and the usufruct of the other third, and two thirds of the share of the deceased in the community property. The usufruct of the remaining one-third (of one-half) of the community property does not come to her by inheritance. Succession of Marsal, 118 La. 212, 42 South. 778. As to that portion, the will merely confirmed. It did not give. Succession of Moore, 40 La. Ann. 535, 4 South. 460.
The judge a quo fixed the value of the estate in accordance with the appraisement placed thereon by the experts appointed according to law for that purpose. Their valuation was prima facie correct, and the burden of proof was on the collector of the tax to show affirmatively the error in such valuation, if any there be; and there is nothing in the evidence to justify the conclusion that there was any error. The figures reached by the district judge are therefore adopted. According to these figures the net value of the separate property was $58,750, and of the community property $88,452.11, of which the deceased owned one-half, or $44,-226.06.
Of the separate property the widow inherits two-thirds, or $39,166.66, and of the *93 community property she inherits $29,484.04, making in all $68,650.70 in full ownership. She also inherits the usufruct of the other one-third of the separate property amounting to $19,583.33. As she is now 58 years of age, she has 15 years of life expectancy, according to the American Experience Table of Mortality. On a basis of 6 per centum per annum, compound interest, fixed by the statute, the present value of the usufruct is $0.582734 for each dollar of capital invested, so that the cash value of said usufruct is $11,-411.67, which must be added to the value of the property inherited in full ownership; and accordingly the total amount on which the widow owes a tax is $80,062.37, which at 5 per centum makes the amount of the tax on. her share $4,003.11.
But inasmuch as the share coming to the minor appears to have been overtaxed, owing to the fact that the value of the usufruct on the share of the separate property inherited by her was not deducted, the amount of that overtax (2 per cent, on $11,411.67), say $228.22, should be deducted from the amount now taxed against her, leaving her to adjust the matter with her child. Otherwise there would be double taxation. This reduces the amount to be taxed against her to $3,774.89.
It is therefore ordered that the judgment appealed from be now amended by adding thereto the following, to wit: It is further ordered that the tax to be paid for account of the widow, Mrs. Page M. Baker, on the amount inherited by her, be fixed at $3,774.89.
And, as thus amended, it is now ordered that the judgment appealed from be affirmed, the' appellee to pay the costs of both courts.
The OHIEE JUSTICE and MONROE, J., dissent.
See concurring opinion of LAND, J., 55 South. 721.