ST. PAUL, J.
Defendant granted to the Algiers Public Service, Incorporated, an “indeterminate permit” to operate .public ferries over the Mississippi river within the corporate limits of the city of New Orleans. Plaintiffs herein represent themselves as citizens and taxpayers and prospective bidders for such franchise, if offered to the highest bidder, as they claim it should be. Wherefore they pray that defendant be enjoined from carrying out said grant, and that it be directed to offer said franchise at public auction. Defendant excepted that the petition showed no cause of action; and, the plea having been sustained, plaintiffs appeal.
I.
Before the year 1921, the granting of franchises for the operation of public utilities (so termed in section 30) was governed by section 29 of Act 159 of 1912, the city charter. Such franchises were to be sold to the highest bidder after certain formalities had been complied with; .and included in such public utilities was “the operation of ferries.”
But in 1921 the Legislature passed Act 94 of that year (Ex. Sess.), section 1 whereof reads as follows:
“That in addition to such powers as it may have relating to the granting of franchises for the operation and maintenance of public utilities, the governing authority of every city in this state having a population of 100,000 or more inhabitants shall have power, subject to the provisions of this act, to grant indeterminate permits for the use of the streets and other public places in connection with the operation and maintenance of any street railway, ferry, electric light, gas or' other public utility in such city, which permit shall continue in force until such time as the city shall purchase such utility under the option hereinafter provided for or until such permit shall be otherwise terminated according to law. * * * ” (Italics ours.)
II.
It will thus be seen that the act of 1921 makes a radical change in such city’s power to grant franchises, privileges, or permits (call them what you please) for the opera *8 tion of public utilities therein; but it is unnecessary for the purposes of this case to mark the extent of such change. Nor is it necessary to go into the reason or. necessity for such change, or follow the very interesting briefs of learned counsel on those points. Eor all that is neither here nor there, and is purely academic so far. as this case is concerned. Suffice it tb say that the Legislature has made the change, and the constitutionality of the act by which the change was made is not challenged. Hence the only question presented is whether the change so made affects the granting of a franchise for a public ferry.
.III.
The contention of plaintiffs (as we understand it) is that Act 94 of 1921 does not aur thorize the granting of indeterminate permits to use the streets and other public places “for” the operation of any street railway, ferry, etc., but only “in connection with” the operation of such public utilities, that franchises for street railways and ferries (which stand on exactly the same footing under both acts) must still be. sold under section 29 of Act 159 of 1912, and when sold the city may then grant- indeterminate permits for the use of the streets and other public places “in connection with” the operation thereof.
IV.
The distinction is a very fine one, and we are not sure that we grasp it fully. Plaintiffs say in their brief:
“The use of a street or a public place, in connection with the operation of a ferry, is not a grant of a franchise to operate a ferry. * * * On the other hand the grant of an exclusive permit to operate a ferry on the Mississippi river did not necessarily carry with it the right to a use of the streets at or near the approaches to these ferries.”
All this may be correct (we do not say it is), but the fact remains that to operate a ferry one must have landing places; auu üUe quays on the river front of 'incorporated cities. are public places. R. O. O. art. 458. So that it is impossible to operate a ferry within the limits of a municipality without the use of a püblic place for a landing.
V.
Hence it follows that the right to operate a ferry must go hand in hand with the right to the use of some public landing. Either both must be let together to the highest bidder, or both must be granted together under an indeterminate permit.
And it is our conclusion that, since the act of 1921, such city has the power either to sell a franchise or to grant an indeterminate permit, as in its judgment may seem best.
The intent of that act seems fairly clear, but, if it lacks clearness, the title makes it plain. Successor of Baker, 129 La. 74, 55 South. 714; Ann. Cas. 1912D, 1181. That title reads:
“An act authorizing the governing authority of every city having a population of 100,000 or more inhabitants to grant indeterminate permits for the maintenance of street railway, ferry, electric light, gas and other public utilities in such city.” (Italics ours.)
We think the trial judge ruled correctly.
Decree.
The judgment appealed from is therefore affirmed.
Rehearing refused by DIVISION B, composed of DAWKINS, LAND, and LECHE, J.T.