Dear Mrs. Kalivoda:
Your inquiry seeks a resolution to the problem created by Acts 361 and 363 of the 1992 Regular Session of the Louisiana Legislature insofar as they both purported to affect R.S. 25:1112(A) and (B) providing for the distribution of fines collected for violations of the littering-prohibition law.
Prior to Act 768 of the 1989 Regular Session, R.S. 25:1112(A) and (B) read as follows:
 " § 1112. Collection and distribution of fines; Louisiana Beautification Fund
 "A. All fines collected under the provisions of this Part shall be payable as follows:
 "(1) Forty-four percent shall be paid to the law enforcement agency issuing the citation.
 "(2) Six percent shall be paid to the office of the district attorney or city attorney who prosecuted the defendant.
 "(3) Fifty percent shall be paid to the local governing authority in which the offense was committed to be used solely for purposes of litter abatement.
 "B. All other funds collected under the provisions of this Part shall be paid into the state treasury on or before the twenty-fifth day of each month following their collection and, in accordance with Article VII, Section 9 of the Constitution of Louisiana, shall be credited to the Bond Security and Redemption Fund. Out of the funds remaining in the Bond Security and Redemption Fund after a sufficient amount is allocated therefrom to pay all obligations secured by the full faith and credit of the state which become due and payable within each fiscal year, the treasurer shall pay an amount equal to the total amount of such funds, except fines, collected or received under the provisions of this Part paid into the treasury into a special fund which is hereby created in the state treasury and designated as the Louisiana Beautification Fund. The Commission shall administer the fund. The funds received from donations and local and private appropriations shall be used for expenses above and beyond the normal operating expenses of the Louisiana litter Control and Recycling Commission and shall not be considered by the Division of Administration when making annual budgets for the operating expenses of the commission.
" * * * "
As amended by Act 768 of 1989, Subsection A of these provisions became:
 " § 1112. Collection and distribution of fines; Louisiana Beautification Fund
 "A. All fines collected under the provisions of this Part shall be paid to the local governing authority in which the offense was committed to be used solely for purposes of litter abatement in litter free zones, including but not limited to costs as provided in R.S. 25:1118(D).
" * * * "
Subsection B was apparently unchanged.
Next came Acts 361 and 362 of 1992. Section 2 of Act 361
of 1992 provided:
 "Section 2. R.S. 25:1112(A) and 1118(C) are hereby repealed."
Accordingly, Act 361 also changed the opening words of R.S. 25:1112(B) from
 "B. All other funds collected under the provisions of this Part shall be paid into the state treasury . . . . "
to
 "B. All monies received under the provisions of this Part shall be paid into the state treasury . . . . "
However, Act 362 of 1992 amended and reenacted R.S. 25:1112(A) to read as follows:
 " § 1112. Collection and distribution of fines; Louisiana Beautification Fund
 "A. All fines collected under the provisions of this Part shall be payable as follows:
 "(1) Fifteen percent shall be paid to the state treasury for the credit of the Louisiana Beautification Fund.
 "(2) Fifteen percent shall be paid to the law enforcement agency issuing the citation.
 "(3) Fifteen percent shall be paid to the office of the district attorney, or city attorney, or other prosecuting authority which prosecuted the defendant unless a fine is paid prior to a charge being made by a prosecuting authority in which case this percentage of the fine shall be credited to the Louisiana Beautification Fund.
 "(4) Fifty-five percent shall be paid to the local governing authority in which the offense was committed to be used solely for purposes of litter abatement in litter free zones, including but not limited to costs as provided in R.S. 25:1118(C).
" * * * "
Accordingly, Act 362 left R.S. 25:1112(B) as it was prior to 1992.
In addition, Section 3 of Act 361 of 1992 provided:
 "Section 3. This Act shall become effective on July 1, 1992."
Act 362 of 1992, on the other hand, had no specifically expressed effective date and, consequently, became effective "on the sixtieth day after final adjournment of the session in which [it was] enacted, "La. Const'n (1974), Art. III, § 19 [prior to its 1992 amendment which did not become effective until November 4, 1992]. The 1992 Regular Session finally adjourned on June 22, 1992, and the generally applicable effective date for Acts of that session not specifying an earlier or later effective date was August 21, 1992.
The dilemma created was thus: If R.S. 25:1112(A) was repealed, as would appear from Act 361 of 1992 standing by itself alone, then the officials who collected these fines were legally required to deposit the entire amounts collected into the special State Treasury account in accordance with the mandate of R.S. 25:1112(B) as amended by the same Act 361. However, if R.S. 25:1112(A) was not repealed but rather amended and reenacted by Act 362 of 1992, then the officials collecting these fines were legally required to distribute the amounts to the various agencies specified according to R.S. 25:1112(A) as amended and reenacted by Act 362.
Under the legal principles that have been thus far defined in Louisiana with respect to the jurisprudential construction and interpretation of legislative Acts and applicable constitutional provisions, this dilemma is not easily or clearly resolvable. There seem to be two equally refutable solutions.
One solution currently appears in volume 16C [pocket part] of the West Publishing Company law book series entitled Louisiana Statutes Annotated. It shows R.S. 25:1112(A) to have been repealed by Act 361 of 1992, effective July 1, 1992. The "Historical and Statutory Notes" to R.S. 25:1112 pertaining to "1992 Legislation" report that "Subsection A of [R.S. 25:1112] was repealed by Acts 1992, No. 361, § 2 effective July 1, 1992" and that "Acts 1992, No. 362, § 1 purported to amend subsec. A of [R.S. 25:1112], which subsection had been repealed by Acts 1992, No. 361." No legal authority is cited for this explanation, and its source — whether the Louisiana Law Institute (R.S. 24:201 et. seq., 251 et. seq.) or some other agency — is not disclosed. However, regardless of the source, the explanation currently appearing in West Publishing Company's law book regarding this matter is binding on no one, since only the courts possess the constitutional power to give definitive construction and interpretation to legislative Acts and, therefore, to declare precisely what the status of the law is. See, for example, State Licensing Bd. for Contractors v. State Civil Service Comm., 240 La. 331, 123 So.2d 76 (La. 1960) and the cases cited therein at p. 78 n. 4 and n. 5.
And Louisiana courts in past cases have spun fibers of interpretational principles which, when woven together, produce a different bolt of cloth:
Acts 361 and 362 of 1992, insofar as they dealt with R.S. 25:1112(A), directly pertained to the same subject matter and, moreover, were enacted at the same legislative session. Laws on the same subject matter, especially two Acts enacted at the same legislative session, are to be reconciled with one another, if it all possible, and considered and construed together as one harmonious law. In re De Armas, 10 Mart. (O.S.) 158 (La. 1821); City of Shreveport v. Urban Land Co., 177 La. 357, 148 So. 256
(La. 1933); City of New Orleans v. Bd. of Sup'rs of Elections,216 La. 116, 43 So.2d 237 (La. 1949); State in the Interest of Sapia, 397 So.2d 461 (La. 1981); and Hilton v. Hilton, 451 So.2d 90
(La.App. 3rd Cir. 1984). [Accord, Shults v. Texas,696 S.W.2d 126 (Tex.App. Dallas 1985) writ ref. (Two Acts enacted in 1981 and amending the same provision of Texas statutes — one Act subjecting drug paraphernalia to forfeiture and the other Act subjecting triplicate prescription forms to forfeiture but not mentioning drug paraphernalia — were construed as one Act authorizing forfeiture of both triplicate prescription forms and all drug paraphernalia.)]
While it might at first seem repugnant and impossible to construe in one Act a simultaneous repeal and amendment-and-reenactment of the same section of law, the jurisprudence of Louisiana [and of some other states] has held precisely such a situation to be harmonious: The reenactment is considered a reaffirmance of the old law and a neutralization of the repeal, so that the provisions of the repealed law which are thus reenacted continue in force without interruption. State v. Mathe, 219 La. 661, 53 So.2d 802 (La. 1951); Perkins v. Bros. of Christian Schools of Lafayette, 71 So.2d 400 (La.App. 1st Cir. 1954) (citing 50 Am. Jur., Statutes, § 555). [Accord, 82 C.J.S., Statutes, § 295, pp. 505-506.]
Even if Acts 361 and 362 of 1992 were considered to be separate, irreconcilable, repugnant Acts, the Legislative Calendar for the 1992 Regular Session reveals that Act 361 [as Senate Bill No. 831] received its final legislative concurrence and vote on June 4, 1992, when the House finally passed this Senate Bill without having amended it. It further reports that Act 362 [as Senate Bill No. 832] received its final legislative concurrence and vote on June 8, 1992, when the Senate voted to concur in the amendments that had been proposed to this Senate Bill by the House. Clearly, Act 362 of 1992 was the latest expression of the legislative will regarding this matter.
It is the firm jurisprudence of Louisiana that when two Acts enacted in the same legislative session are in irreconcilable conflict with one another, the Act enacted last will prevail as "the latest expression of legislative intent," State in the Interest of Wright, 408 So.2d 1123, 1124 (La.App. 1st Cir. 1981). Events subsequent to final legislative vote of passage and enactment do not serve to express the legislative will and are not determinative of which Act ultimately becomes effective as the prevailing law. As explained in Wright:
 "Though both acts were signed by the governor on the same day, July 24, 1980, Act 708 received its final legislative approval on July 13. It is apparent then that even though both acts were signed on the same day, Act 692, having been approved by the legislature one day later than Act 708, is the latest expression of legislative will."
Id., at pp. 1124-1125. Accordingly, it makes no difference that Act 361 contained an earlier effective date than Act 362; when Act 362 received its final legislative approval four days after Act 361, Act 362 became the latest expression of the legislative will, vitiating the previous expression contained in Act 361, which then, as a consequence thereof, could never become effective as law.
This same rationale has been held to govern the converse situation — an Act receiving a later final passage by a legislature is the latest expression of the legislative will and, after taking effect as law, cannot be negated upon arrival of a later date designated as the effective date of a conflicting Act which received an earlier final passage in the same session. See Williams v. State, 215 Ark. 757,223 S.W.2d 190 (Ark. 1949); People ex rel. English v. Atchison, T. S.F. Ry. Co., 370 Ill. 420, N.E.2d 170 (Ill. 1938); and McDonald v. Justices of Superior Court, 299 Mass. 321, 13 N.E.2d 16 (Mass. 1938). Thus, there are other jurisdictions besides Louisiana in which the determinative event for the latest expression of the legislative will is the final vote of adoption by the legislature, regardless of other subsequent events such as gubernatorial approval and effective dates of laws.
Furthermore, even if Act 361 of 1992 had actually become effective as law on July 1, 1992, and repealed R.S. 25:1112(A) before Act 362 of 1992 [amending and reenacting R.S. 25:1112(A)] became effective on August 21, 1992, the case of State ex rel. Bd. of Comm'rs of Lake Borgne Basin Levee District v. Bergeron,235 La. 879, 106 So.2d 295 (La. 1958) gives judicial recognition to the legislative process of amending and reenacting as relating back to and saving the original law amended and reenacted, even when the original law might have been, at the time, absolutely null and void and without any legal existence at all. In this case, the original law amended and reenacted appeared to have been invalidly enacted in the first place in violation of the constitutional requirement that every Act have a title indicative of its body. Even though, as a result thereof, the original law might have had no legal existence, the court explained:
 "It is fundamental that to enact is to decree, to establish by law and to perform or effect a law. To reenact is to enact again . . . . [W]hen the Legislature enacted Act 22 of 1950, Ex. Sess. and declared in its title its object and purpose to be `to amend and reenact Section 3 of Act 68 of 1950', the effect of such legislative action was to establish and make the said Sec. 3 of Act 68 a law."
Id., 106 So.2d at 299. Thus, under the rationale of the Bergeron case, even if Act 361 of 1992 had taken effect on July 1, 1992, and repealed R.S. 25:1112(A), which then became legally non-existent, Act 362 of 1992, when it became effective on August 21, 1992, made R.S. 25:1112(A) [as reworded in Act 362] a law again by reenacting it.
It must be noted, in this regard, that this situation does not involve a subsequent Act which sought to revive a repealed law by mere reference to its title, section, or general subject matter. In this situation, Act 362 of 1992 set forth completely and precisely the statutory language that was finally adopted and passed by the legislature into law.
Act 362 of 1992 was an "amendatory" Act which took a previous law on the same subject matter (the "amended" Act) and enacted it all over again in a new form and substance of statutory language. An "amended" and an "amendatory" Act, being statutes relating to the same subject matter, must be taken and construed as laws in pari materia. Gas Light Banking Co. v. Nuttal, 19 La. 447 (La. 1841). And in the construction and interpretation of a statute involving laws in pari materia, the laws on the same subject matter to be included encompass not only those which were currently in force when the statute was enacted but also those which had been repealed. State v. Caldwell, 170 La. 851, 129 So. 368 (La. 1930), app. dismissed,282 U.S. 801, 51 S.Ct. 40, 75 L.Ed. 720; Succ. of Baker, 129 La. 74,55 So. 714 (La. 1911); and the cases cited therein.
This discussion of judicial principles of statutory interpretation and construction reveals the legal difficulty of this situation. Good legal advice to a client in such a situation is to avoid risking an imposition of penalties or a loss of substantial rights by trying to resolve such a maze of conflicting legal theories and jurisprudence and acting on such attempt. This dilemma cannot be resolved by an attorney general's opinion or by a unilateral decision of disbursing officials acting even with the counsel of the attorney general or a district attorney. Too high is the risk of error, and too grave are the consequences to persons who misapply public funds in trying to discern the true status of this law and who thereby happen to choose the wrong distribution of the fine receipts. The legislature has now resolved this situation for the future by enacting Act 579 in the 1993 Regular Session; however, for litter-violation cases falling under the 1992 legislation, this dilemma cannot be acted on with any certitude or protection except in one way: a judicial order specifying the distribution of the fine collected, in accordance with either Act 361 or Act362 of 1992. The courts and their judges are vested with the constitutional power to construe and interpret both legislation and the constitution and, furthermore, possess judicial immunity from liability and suit for their adjudications. Hence, our advice is that unless the new Act 579 of 1993 is applicable, the prosecutor, upon obtaining a favorable adjudication of a littering violation under the applicable statutes and a court-ordered payment of a fine pursuant thereto, formally move the court for an order declaring the proper manner in which the amount of the fine is to be distributed under the law and specifying exactly how it is to be distributed.
Trusting this opinion has fully answered your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
RPI/TSH/bb 0866f