145 So. 374

PRITCHARD et al. v. SOUTHERN INS. CO. OF NASHVILLE, TENN., et al.

No. 31438.

Nov. 28, 1932.

Rehearing Denied Jan. 3, 1933.

Deutsch, Kerrigan & Burke and Bert Flanders, Jr., all of New Orleans, for appellant.

John C. Hollingsworth, of New Orleans, for appellees.

ST. PAUL, J.

This appeal was before us on motion to dismiss, which we denied. Pritchard v. Southern Ins. Co., 173 La. 504, 137 So. 907. It is now before us on the merits.

### I.

In passing on the motion to dismiss, the case was stated thus:

"This suit was brought against the Southern Insurance Company of Nashville and the Continental Casualty Company of Chicago, on a life insurance policy in which the plaintiff was named as beneficiary. The policy was issued by the Southern Insurance Company of Nashville for $5,000, payable $500 per annum in quarterly installments of $125 each. All but $2,875 had been paid, and only two [further] installments, of $125 each, were past due, when the suit was filed. The Con-

tinental Casualty Company was sued as surety on the bond given by the Insurance Company, as required by *Act No. 172 of 1908, p. 232*, as one of the conditions on which a foreign insurance company may do business in this state. The plaintiff prayed for a judgment against the two companies, in solido, for $2,875, payable in quarterly installments according to the terms of the policy, with interest on each installment from the date of its maturity. The Southern Insurance Company allowed judgment to go against it by default. *The Continental Casualty Company filed an exception of no cause or right of action, because the insured had died before the Casualty Company became surety on the Insurance Company's bond.* The Casualty Company pleaded also that, in any event, a judgment could not be rendered against the Company for the installments which were not yet due when the suit was filed. The judge of the Civil District Court *overruled the exception of no cause or right of action,* at the same time intimating that he would not give plaintiff judgment for the amount of the installments which were not due when the suit was filed, but reserving his judgment on that question. The Continental Casualty Company then answered the suit, and, after trial on the merits, judgment was rendered against the Company for $250, being the amount of the two installments that were due when the suit was filed. In the judgment the court reserved whatever right of action the plaintiff might have for the installments that were not due when the suit was filed. The Continental Casualty Company appealed from the decision." (Italics by this writer.)

## II.

Plaintiff has answered the appeal, but has asked only for damages for alleged frivolous appeal (which will be noticed hereafter), and has not asked for any increase in the judgment; so that we are not now concerned with her claim for the installments which were not yet due when the suit was filed. And. *in final analysis,* the sole question involved is, in effect, whether appellant's exception of *no cause or right of action* is well founded; for the petition shows on its face that the insured died three years before the appellant became surety on the insurance company's bond, and that at the time said death occurred there was another and different bond, with another and different surety thereon, which has since expired and been canceled, and for which the bond herein sued upon, with this appellant as surety thereon, has been substituted.

In other words, the question is whether the surety on the bond required of an insurance company, by *Act No. 172 of 1908, p. 232,* may lawfully resist payment of a claim against said insurance company growing out of a policy issued by it, due and unpaid, on the ground that said claim did not *arise and accrue* during the term of said bond.

## III.

Act No. 172 of 1908 is entitled, in substance, an act requiring insurance companies to give a bond "conditioned for the prompt payment of claims arising in this State." And the title of an act may be looked at for aid in ascertaining its meaning. United States v. Fisher, 2 Cranch, 358, 2 L. Ed. 304; Burgett's Lessee v. Burgett, 1 Ohio, 469, 13 Am.

Dec. 634; State v. Bolden, 107 La. 116, 31 So. 393, 90 Am. St. Rep. 280; Forman v. Sewerage & Water Board, 119 La. 49, 43 So. 908, 12 Ann. Cas. 773; Succession of Baker, 129 La. 74, 55 So. 714, Ann. Cas. 1912D, 1181.

The act itself provides that the bond shall be given "conditioned for the prompt payment of all claims arising and accruing * * * during the term of said bond by virtue of any policy issued," etc. But it also provides that "such bond shall be *annually renewed*, and the old bond *will become cancelled* by the acceptance of the new bond;" and that "no bond shall be canceled, or withdrawn unless a new bond *has been substituted as above provided*, or satisfactory evidence has been submitted to the insurance department that the company has discharged all of its obligations and liabilities in this State." (Italics by this writer.)

█ Hence, if an old bond may be canceled (as it may) without satisfactory evidence that the company has discharged all its obligations and liabilities in this state, by the mere substitution of a new bond, but no action lies on this new bond for any claim (though due and unpaid), if arising and accruing under the old bond, then the Legislature has most signally failed in its announced purpose to require a bond "conditioned for the prompt payment of claims arising in this state," unless, forsooth, an assured be so *canny* as to die, or suffer his accident, or have his house burn, at least some three months or thereabout before the time for the *annual renewal* of the bond, so as to allow time for the required proofs of loss, the stipulated delays, and an opportunity to file suit promptly before the old bond be *cancelled* by the substitution of the new.

But we do not think the Legislature has thus failed of its purpose. It has wisely provided that the bond must be renewed annually, knowing well that bonds which are "pigeonholed," and see the light of day only when the necessity for them grows urgent, too frequently go "stale." Individual sureties go bankrupt, or move away, or die, and their heirs scatter; bonding companies withdraw from the state, go out of business, liquidate. But a bond renewed yearly is not so liable to be thus affected. And the provision that the old bond shall be *canceled* forthwith by the substitution of the new shows clearly enough that the latter was to stand in the place and stead of the former.

█ It must be conceded, however, that the words, "all claims arising and accruing * * * during the term of said bond by virtue of any policy issued, etc.," *are* capable of two meanings. They may mean claims "arising and accruing during the term of said bond" *against the insurance company*; or they may mean claims "arising or accruing during the term of said bond" *against the surety on the bond.* To give them the one meaning simply emasculates the statute, as we have shown; to give them the other carries out the manifest purpose and declared intention of the legislator. That other meaning must therefore be given them, "ut res magis valeat quam pereat."

As the liability of a surety does not accrue until the principal debtor has defaulted, the meaning of the statute is that the surety on the bond shall be liable only for such defaults on the part of the principal as occur whilst the bond is in force; and the bond is in force until canceled.

## IV.

We think what we have said is enough to warrant the conclusion that, though the appellant is in error, yet its appeal is not *frivolous*.

### Decree.

For the reasons assigned, the judgment appealed from is affirmed.