15 So.2d 880

**SCHIMPF v. THOMAS, Sheriff.**

No. 37105.

June 21, 1943.

Dissenting Opinion June 23, 1943.

On Rehearing Nov. 8, 1943.

W. T. Holloway, of Jonesboro, and Chas. H. Morton, of Farmerville, for relator.

Fred L. Jackson, Dist. Atty., of Homer, and Wayne Stovall, Asst. Dist. Atty., of Jonesboro, for respondent.

ODOM, Justice.

This is an injunction proceeding brought by the plaintiff Schimpf, by which he is seeking to have the sheriff of Jackson Parish prohibited from destroying certain mechanical devices designed and used for gambling purposes, said machines being the property of the plaintiff.

It appears that the plaintiff in this proceeding was defendant in a criminal prosecution instituted by the district attorney, charging Schimpf with the crime of gambling, as defined by Article 90 of the Louisiana Criminal Code, which is Act No. 43 of 1942. At the trial of the criminal case, there were brought into court and offered in evidence 102 automatic pay-off machines, used for gambling purposes, said machines being the property of the defendant, found in his warehouse, and seized and brought into court by the sheriff.

The defendant was convicted of the crime of gambling, as charged. Thereupon the trial judge ordered the sheriff to destroy the machines, according to the provisions of Act No. 231 of 1928.

After the machines were ordered destroyed, counsel for Schimpf, defendant in the criminal proceeding and plaintiff here, asked the court for a short delay in which to prepare an injunction suit to prohibit the sheriff from confiscating the machines.

Schimpf, plaintiff in this case, alleged that he was the "owner of certain machinery, equipment and objects, which the Sheriff and the District Attorney have illegally termed and called devices for gambling, now has in his possession and is stored in the Sheriff's Office of Jackson Parish, Louisiana, as will appear by the inventory of the same on file and of record in the Sheriff's Office, within the possession of the said Sheriff".

He further alleged that said "machinery and equipment" was illegally seized and taken into the possession and control of the sheriff "from a warehouse, owned, by your petitioner, situated in Jonesboro, Jackson Parish, Louisiana, where they were being stored", and that the machines were being illegally and unlawfully detained and held by the sheriff "without any cause or excuse whatsoever".

Plaintiff further alleged that, at the time the seizure of the machines was made, they were not in use and were not being operated, and that they were not suitable for operation and "were under lock and key, were stored in a private warehouse, where they could not be used or operated; that they were stacked and stored in the said

warehouse and were not being used for any purpose whatsoever, and especially were not being used or operated for the purpose of gambling or otherwise". He alleged that the sheriff was refusing to deliver possession of the machines to him and was "preparing to destroy them without any cause or excuse whatsoever, stating that he is acting under the authority of Act No. 231 of 1928, which said act is null and void and of no effect, having been repealed by Act No. 43 of 1942, section [article] 90".

Alleging that the sheriff is without authority or power under the law to destroy the machines, plaintiff prayed that the sheriff be ordered to show cause why a preliminary injunction should not issue restraining, enjoining, and prohibiting him from destroying the machines, and that after trial he have judgment in his favor and against the sheriff, "recognizing your petitioner as the owner of the machinery and equipment, and that the sheriff, Neil Thomas, be ordered to deliver the same in his possession to your petitioner", and that the sheriff "be forever restrained, prohibited and enjoined from destroying or disposing of the same, and that the injunction be made permanent".

The sheriff in his answer admitted that the plaintiff was the owner of the 102 slot and pin-ball machines then in his possession, and that the plaintiff had been convicted of the crime of gambling, and that the slot and pin-ball machines were used as evidence in the case, and that "the Honorable Second Judicial District Court has ordered your respondent to destroy them all in accordance with law". The sheriff admitted that the machines were taken from a warehouse in Jonesboro, Louisiana, owned and operated by the plaintiff. He admitted that he intended to destroy them, as ordered by the court, and that he had refused to deliver them to the plaintiff.

After trial of the case, there was judgment rejecting plaintiff's demands for injunction, and his suit was dismissed at his costs.

The plaintiff applied to this court for writs, alleging that he had no adequate remedy by appeal. The writs were granted, and the case is now before us for review.

Counsel for plaintiff say in their brief that, after a criminal trial in which the defendant Frank Schimpf was convicted "of the Business of Gambling", "the Judge ordered the Sheriff to destroy 102 machines owned by Frank Schimpf, which were not being used for any purpose but were stored in his private warehouse at the time they were taken by the Sheriff". They then set up their main defense, which is that, since the machines were not in operation at the time they were seized by the sheriff, "the Sheriff was without the authority or power to destroy them", and that Act No. 231 of 1928, under which he was acting, is null and void, having been repealed by Article 90 of the new Criminal Code (Act No. 43 of 1942). Counsel say in their brief at page 4: "The sole and only question therefore presented is whether or not the Sheriff has the authority to destroy the machines which were not in operation and had not been in operation and were not in a place of business of any kind or nature, over the objection of the plaintiff."

·Section 1, Act No. 231 of 1928, reads as follows: "Be it enacted by the Legislature of Louisiana, That all officers of the State of Louisiana are hereby authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find in operation."

Counsel's argument is that, since 'the "machines", as they term them, were not in operation at the time they were seized, the sheriff should be prohibited from confiscating or destroying them.

▮ There is no merit in plaintiff's argument, for the reason that the act specifically provides that it is the mandatory duty of the officers "to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find in operation"; so that, under the precise language of the act, if such machines come to the attention of the officers, they must be confiscated whether they are being operated or not. (Italics are the writers.)

▮ In this case the so-called "machines" were stored in plaintiff's warehouse when found by the sheriff. They were not being operated at that time. The warehouse was closed and locked. At the time Schimpf was being · prosecuted for gambling, he was also being prosecuted for selling intoxicating liquors and having intoxicating liquors in his possession for sale. In connection with the prosecution for violating the liquor traffic laws, the sheriff procured the issuance of a search warrant, authorizing him to search the warehouse to see whether there were contained therein any intoxicating liquors. Schimpf informed the sheriff that he, the sheriff, need not make use of the search warrant, but that he, Schimpf, would open the warehouse in order that the sheriff might search it. On entering the warehouse, the sheriff found therein the gambling devices, and immediately took possession of them, and they were offered in evidence in the case wherein Schimpf was prosecuted for gambling.

Under Act No. 231 of 1928, it matters not whether such gambling devices are in operation at the time they are taken, because the act provides that the officers must confiscate them when they come to their attention; so that, unless Act No. 231 of 1928 has been repealed, plaintiff's suit for injunction is not well founded.

Counsel for plaintiff say that the act was repealed by Act No. 43 of 1942, which is an act, according to its title, "To adopt a Criminal Code for the State of Louisiana". Counsel are mistaken. That act is printed in a separate volume, and at page 147 of that volume, under Section 2, "Statutes Repealed", the following provision appears: "The following statutes or parts of statutes are hereby repealed and shall have no application to crimes committed after the effective date of this Code."

Then follows a list of the statutes and parts of statutes repealed, which list covers the succeeding 21 pages. Act No. 231 of 1928 is not mentioned as one of the statutes repealed.

Section 3 provides that certain statutes are "recognized as continuing in force", and lists them.

On page 170 of the Code, it is provided in Section 4, "General Retention of Non-Repugnant Statutes", that: "All laws or statutes or parts thereof not repealed in Section 2 hereof, and all laws or statutes or parts thereof not specifically retained in Section 3 hereof, where such laws, statutes, or parts thereof, are not repugnant to any of the provisions of this Act, are recognized as continuing in force."

■ The provisions of Act No. 231 of 1928 are not repugnant to any of the provisions of the Criminal Code, and therefore that act is "recognized as continuing in force".

In support of their argument that gambling devices, such as slot machines, cannot be seized and confiscated by the officers unless they are being operated at the time of the seizure, counsel for plaintiff cite and rely upon the case of State v. Croal, 198 La. 820, 5 So.2d 16.

That case has no application whatever to the issue involved in the case presently before us. The question as to the right, power, and duty of officers to confiscate or destroy such gambling devices was not involved in that case. In that case the defendant was prosecuted under a bill of information charging him with "permitting a slot machine to be on his premises and in his building, in violation of Act 107 of 1908" (quotation from opinion). The court in the Croal case analyzed, in a lengthy discussion, the provisions of the act of 1908.

From this analysis it clearly appears that the defendant in that case was being prosecuted under the second clause of the second section of the act, which, said the court, "* * * makes it unlawful for any owner or lessee or tenant or proprietor of any building or premises where business of any nature is conducted to permit or allow a slot machine or similar mechanical device to remain in the building or on the premises, whether the slot machine or similar mechanical device is in use or not in use."

Immediately following this quotation the court used the following language, which is relied upon by counsel for plaintiff in the case at bar: "An analysis of the statute leaves no doubt that it is not unlawful for the owner or lessee or tenant or proprietor of any building or premises to permit or allow a slot machine or other similar mechanical device to be or remain in the building or on or about the premises unless the machine is operated in violation of the first section of the statute, or unless business of some kind is conducted in the building or on the premises."

That was not a case where the sheriff had seized and was attempting to confiscate a slot machine, and therefore the ruling had no application to this case.

The "machines" in possession of the sheriff were all "gambling devices known as slot machines". They were all automatic pay-off machines, according to the testimony of the sheriff, who seized them, and according to the testimony of the chief of police of the Town of Jonesboro, who was with the sheriff when the seizure was made.

According to the testimony of these witnesses, there were in the warehouse a number of machines, juke boxes, etc., which were not automatic pay-off devices. But these were not taken over by the sheriff.

Moore, the chief of police, was called as a witness by the plaintiff. He testified that "There were some pin-ball machines taken in the raid. Mr. Jackson [who seems to have been present when the machines were taken] told him [Schimpf] he did not want any except automatic pay off, and Mr. Schimpf told him which was which". He was then asked, "You merely took those that were designated by him as being automatic pay off?" His answer was, "Yes."

The sheriff testified that some of the machines were pin-ball machines, and he was asked:

"Q. Are you able to swear that each and every one of these machines is a gambling device? A. Yes.

"Q. Would you say that each of the machines paid off in money? A. They paid off in money, or paid off after you made your point."

The sheriff was asked whether he had on former occasions picked up and destroyed slot machines, and he said he had. He was then asked:

"Q. Are these machines [the machines then in his possession] similar to the ones you picked up and destroyed? A. Yes, they are all slot machines."

The trial judge in Article 4 of his answer to the writ said: "Further answering said paragraph, your respondent shows that the 102 machines were slot machines and automatic pay-off machines and that it was established to the satisfaction of the trial court, by legal and competent evidence, and beyond a reasonable doubt, not only in this case, but in the prosecution of the defendant—relator herein—under Article No. 90 of the Louisiana Criminal Code (Act No. 43 of 1942) that the defendant was guilty of the charge of gambling * * *."

In Article 5 the judge said: "In answer to Paragraph Five (5), your respondent shows that all of the 102 machines were slot machines and gambling devices; those that were not outright slot machines were automatic pay-off machines by the insertion of a coin and pulling a lever thereto; all of the machines were offered in evidence and the operation of some of the machines were [was] demonstrated in open court during the trial of the case—one of the machines in such demonstration was 'played' four (4) times, paid off once and failed to pay off three (3) times."

Section 7 of Rule XIII of the rules of this court, as amended May 29, 1941 (197 La., XLI), provides that a petition for a writ of certiorari, prohibition, mandamus, etc., to review a judgment of the district court must be verified by the affidavit of the petitioner or his attorney, and that, before such petition is presented to the Supreme Court, a copy of the petition must be delivered or mailed to the judge whose order or ruling is complained of, or to any other officer whose action is complained of, and to the adverse party or parties, "* * * in order that the judge or other officer, or the adverse party or parties, may submit

*immediately* any reason that he or they may have to urge in opposition to the petition." (Italics are the writer's.)

It further provides that the fact that such delivery or service of a copy of the petition has been made, and the method of delivery or service, "must be verified by the affidavit of the petitioner or of his attorney".

This amendment seems to have been overlooked both by the judge and by counsel for relator, because the attorneys did not make affidavit that they had served a copy of their petition for writs on the judge, and the judge did not "immediately" submit the reasons which he had to urge in opposition to the petition. The trial judge filed in this court, after the writs were granted, his reasons for ruling as he did and his opposition to the writs; so that, at the time the writs were granted, we did not have the benefit of the judge's answer. This frequently happens, and for that reason writs are sometimes inadvertently issued.

After reading the returns made by the judge and the sheriff, and after reading all the testimony brought up, our conclusion is that the writs in this case should be recalled.

For the reasons assigned, the writs heretofore granted are recalled, and relator's petition is dismissed.

O'NIELL, C. J., dissents and hands down reasons.

HIGGINS, J., concurs in the decree.

FOURNET, J., dissents in part and assigns written reasons.

O'NIELL, Chief Justice (dissenting).

The only authority claimed by the judge for ordering the sheriff to destroy the 102 slot machines that were found in Schimpf's warehouse is Act No. 231 of 1928. I agree with Schimpf that this statute does not permit an officer to confiscate slot machines unless he finds them *in operation*, or unless they come to his attention while they are *in operation*. The meaning of the statute is expressed too plainly to admit of any other interpretation,—thus:

"That all officers of the State of Louisiana are hereby authorized and empowered, and it is made mandatory and compulsory on their part, to confiscate and immediately destroy all gambling devices known as slot machines that may come to their attention, or that they may find *in operation*." (Italics mine).

I would doubt the constitutionality of this statute if it purported to authorize the officers to confiscate and immediately destroy—without any process of law whatsoever—any machine that an officer might find and adjudge to be a slot machine, when it is not in operation. But the statute does not purport to authorize officers to confiscate or destroy slot machines unless they are found in operation. And, surely, the statute does not mean that, although the officers are not allowed to confiscate or destroy any slot machines except those "that they may find in operation", nevertheless

the officers may "confiscate and immediately destroy" all "slot machines that may come to their attention",—even though the slot machines that may come to the officers' attention are not in operation.

There is · an unnecessary punctuation mark in the statute—an unnecessary comma—between the phrase "that may come to their attention" and the phrase "or that they may find in operation". But I believe that the inserting of the comma was merely a matter of style of expression on the part of the author of the statute. It· is not likely that he intended the comma to do such mischief as to bring about an arbitrary discrimination between the officers who "find" slot machines and those who have them "come to their attention".

Schimpf was prosecuted under a bill of information charging that he did "conduct the business of gambling by having in his possession, in a building and premises owned by him in the Town of Jonesboro, Jackson Parish, Louisiana, one hundred and · two (102) mechanical devices known as Slot Machines, Pin Ball machines and other contrivances which were used or can be used, operated and gambled with for money and representatives of money· and prizes and by which a person risks the loss of something of value in order to realize a profit." In answer to a motion for a bill of particulars the district attorney declared that the prosecution was under Article 90 of the Criminal Code, which reads as follows: "Gambling is the intentional· conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person

risks the loss of anything of value in order to realize a profit."

Schimpf filed a motion to quash the bill of· information on the ground that it did not charge him with gambling, as defined in the law under which he was prosecuted. The judge overruled the motion to quash the bill of information, and after trial convicted Schimpf and sentenced him to pay a fine and to be imprisoned in the parish jail. On appeal this court reversed the ruling of the trial judge, sustained the motion . to quash the bill of information, dismissed the proceedings and ordered Schimpf discharged from further prosecution.

The reason for the judgment rendered by this court in the criminal prosecution, as stated in the court's opinion, was that the mere possession of gambling paraphernalia, such as slot machines, not "in operation", did not constitute the offense of gambling, as defined in Article 90 of the Louisiana Criminal Code. See State v. Schimpf, 203 La. 835, 14 So.2d 676, decided today, and not yet officially reported. In the course of the opinion in that case it is recited that the sheriff, accompanied by the district attorney, the assistant district attorney, and the town marshal, searched a warehouse owned by Schimpf, · adjoining his residence in Jonesboro, and discovered in the warehouse, which was closed and under lock and key," 102 mechanical devices known as slot machines, pin ball machines, and like contrivances, all of which were seized by the sheriff. And it is stated in the opinion in that case that the bill of information, charging Schimpf with conducting the business of gambling

by having the slot machines in his possession, was filed on the third day after the sheriff discovered and seized the machines.

Schimpf, therefore, stands acquitted by this court of using the slot machines or allowing them to be used for the purpose of gambling. As the only statute which the judge invokes as his authority for ordering the sheriff to destroy the 102 slot machines —Act No. 231 of 1928—does not allow an officer to confiscate or destroy a slot machine unless it is found in operation, there is no authority whatever in law for the sheriff to destroy Schimpf's 102 slot machines.

FOURNET, Justice (dissenting in part).

The author of the majority opinion has apparently overlooked the fact that we granted the writs in this case because the 102 machines confiscated and ordered destroyed were not all "slot machines," as they are commonly known, many of them being pin ball and other machines similar thereto, and consequently not subject to confiscation and destruction as "slot machines" within the meaning and contemplation of Act No. 231 of 1928, for the obvious reason that before they can be classed as gambling devices, as contra-distinguished from devices used in games of skill or for amusement, proof must be introduced to establish this fact, as was necessary in this case.

The sheriff testified that in addition to the devices commonly known as "slot machines" he seized only those pin ball and similar machines and devices pointed out to

him by the plaintiff, at his request, as automatic pay-off contrivances. The trial judge, in order to satisfy himself that these pin ball and other similar machines were gambling devices, ordered or caused them to be operated in his presence by the placing of coins in the slots thereof and actually saw them automatically pay off during their operation.

The object of Act No. 231 of 1928, as expressed in its title, is to make "it compulsory for all officers of the State of Louisiana, to confiscate and destroy all machines commonly known as 'Slot Machines' that may come to their attention * * *." Pin ball machines are not commonly known as slot machines. As just pointed out, extrinsic evidence is necessary to establish the fact that a pin ball or similar machine is a gambling device.

It is my opinion, therefore, that the judgment of the lower court, in so far as the pin ball and other similar machines or devices are concerned, should be reversed and that to that extent an injunction should be issued prohibiting the sheriff from destroying them.

On Rehearing.

HAMITER, Justice.

Our further consideration of the issues of this case has resulted in no change in the decision announced in the majority opinion rendered on the original hearing.

In that opinion there is expressed the conclusion that the provisions of Act No. 231 of 1928, by the precise language used, require officers of the State of Louisiana

to confiscate and immediately destroy all gambling devices commonly known as slot machines that may come to their attention, whether the machines are then being operated or not. This construction, which is contrary to the contention of plaintiff that only those found in operation could be confiscated and destroyed, finds support in the statute's title which reads:

"An Act

"Authorizing and empowering and making it compulsory for all officers of the State of Louisiana, to confiscate and destroy all machines commonly known as 'Slot .Machines' that may come to their attention, and repealing all laws in conflict herewith."

▪ A title is no part of a statute, but it may be considered in determining the legislative intent where doubt exists. Succession of Baker, 129 La. 74, 55 So. 714, Ann.Cas.1912D, 1181; Pritchard v. Southern Ins. Co. of Nashville, Tennessee, ·176 La. 187, 145 So. 374; Hughes v. Rudd, 178 La. 588, 152 So. 300. In considering the title of the act in question, we notice that it speaks of the machines that may come to the officers' attention and makes no reference whatsoever to those found in operation.

Plaintiff's other complaint is that some of the machines seized were not gambling devices commonly known as slot machines and that those not so known should be released and not destroyed. A slot machine is a machine the operation of which is started by dropping a coin into a slot. Webster's New International Dictionary, Second Edi-

tion. According to the evidence in the record, each of the instruments confiscated was of that character, and further each paid off automatically in money when played. Hence all were gambling devices commonly known as slot machines; and they were subject to confiscation and destruction.

The judgment heretofore rendered is reinstated and now made the final judgment of this court.

O'NIELL, C. J., and FOURNET, J., dissent, adhering to their dissenting opinions.