38 So.2d 385

STATE ex rel. THOMPSON v. DEPART-
MENT OF CITY CIVIL SERVICE
et al.

No. 38706.

Dec. 13, 1948.

Rehearing Denied Jan. 10, 1949.

Henry G. McCall, City Atty. and Henry B. Curtis, Asst. City Atty., both of New Orleans, for defendants and appellants.

Moise W. Dennery, of New Orleans, for respondents and appellants.

Charles J. Rivet, of New Orleans, for appellee.

HAMITER, Justice.

In this mandamus proceeding relator, Albert T. Thompson, seeks to obtain reinstatement as one of the Judges of the Recorders' Courts in the City of New Orleans and to compel payment of his salary of $350 per month, beginning May 15, 1946, and continuing until he legally occupies that position. Those impleaded as defendants are the members of the New Orleans Civil Service Commission, and also the Mayor, the members of the Commission Council,

and the Director of Personnel, all of the City of New Orleans.

On May 14, 1934, relator was appointed as Judge of the Second Recorders' Court of New Orleans, and thereafter served continuously in the position until May 17, 1946, when, by action of the Commission Council of that city, he was replaced by Judge Alwyn J. Justrabo. This action was reaffirmed by the Council on August 2, 1946, at which time it also fixed the compensation of each of the four members of the Recorders' Courts in the amount of $4200 per annum.

Judge Thompson, thereupon, appealed to the City Civil Service Commission, alleging that he had been discharged without good and sufficient cause and without a compliance with the provisions of the City Civil Service Law, Act No. 171 of 1940, by which his position was governed, and praying for reinstatement and for all compensation lost as a result of the alleged illegal removal. After a hearing the City Civil Service Commission concluded that the position of Judge of the Recorders' Court was controlled by the provisions of the City Civil Service Law from January 1, 1943, until July 31, 1946, on which latter date an amendment to the City Charter, Act No. 301 of 1946, removed it from the classified service; and that Judge Thompson, since he had not been discharged for cause, was entitled to reinstatement until July 31, 1946, with full pay for all time lost.

Commencement of the instant cause followed; and in it, after trial, the district court found (as did the City Civil Service Commission) that the City Civil Service Law, Act No. 171 of 1940, blanketed the judges of the Recorders' Courts in the classified service. But the court also held that they were not removed from the protection of that law by virtue of the provisions of Act No. 301 of 1946, which amended certain sections of the Charter of the City of New Orleans. Accordingly, there was judgment rendered in favor of plaintiff and against the defendants "commanding them, and each of them, to recognize the position of Judge of Recorders' Court in New Orleans, which relator occupied on May 15, 1946, to be in the classified service of the City of New Orleans; commanding said defendants and each of them, to reinstate relator in his said position, and commanding them, and each of them, to provide relator with such certification of facts as may be necessary to support relator's claim to, and compel payment of his salary as Judge of Recorders' Court in New Orleans since May 15, 1946, and continuously thereafter so long as relator legally occupies said position; defendants to pay all costs."

All defendants appealed from the judgment.

The first and most important question presented by this controversy for determination is whether the judges of the Recorders' Courts in the City of New Orleans are

within the classified service outlined in Act No. 171 of 1940, the City Civil Service Law.

Act No. 159 of 1912 (the City Charter), in Section 21 thereof, made provision for not fewer than three police courts in the City of New Orleans to be known as the Recorders' Courts. Further, it directed that each court have one judge, at least 35 years of age, and that the Commission Council should choose him, fix the hours for holding court, and provide the method and mode of the court procedure. Under later amendments, Act No. 122 of 1914, Act No. 115 of 1921, Ex.Sess., and Act No. 338 of 1936, four courts were authorized and the minimum age of each judge was fixed at 25 years.

In Article VII (Judiciary Department), Section 94, of the Constitution of 1921, it was provided:

"The judges of the Recorders' Courts in the City of New Orleans shall be qualified electors, not less than twenty-five years of age, and need not be attorneys at law. The jurisdiction of said courts shall extend to the trial of offenses against city ordinances; they shall have no other jurisdiction. The judges of said courts shall be elected and removed by the Commission Council, or other governing authority, of the City of New Orleans."

The same Constitution in Section 15 of Article XIV (Parochial and Municipal Affairs) said:

"The Legislature shall provide for civil service in municipalities having a population of one hundred thousand (100,000) or more, and for the recognition and adoption of the merit system in the employment or appointment of all applicants; and shall provide against the discharge of employees or appointees without good and sufficient cause."

As directed by the latter constitutional provision the Legislature of 1940 adopted Act No. 171, the title of which, insofar as pertinent, reads:

"To create and establish a Classified Civil Service, based upon the merit system of personnel administration, to administer, control and regulate employment in the service of all cities in the State of Louisiana having a population exceeding One hundred Thousand (100,000) * * * to define the Classified Service and the Unclassified Service; to regulate and control employees in the Classified and Unclassified Services and the method of employing certain personnel by such cities having a population in excess of One Hundred Thousand (100,000); to provide, and to authorize the establishment of, rules for personnel administration in the service of such cities; to require the classifying of, and to provide pay plans for, positions in the service of such cities; * * * to determine the status of existing employees; to provide for reduction or increase in personnel, and for regulations for the transfer, promotion, demotion, lay-off, dismissal, suspension, reduction in pay, or retirement of employees in the Classified Service; * * * to pro-

hibit political activities by employees in the Classified Service; * * *."

Section 1 of the Act states:

"The purpose of this Act is to guarantee to all citizens a fair and equal opportunity for public service, irrespective of religious, political or factional considerations; to establish for all cities in the State of Louisiana having a population exceeding One Hundred Thousand (100,000) according to the last preceding decennial census of the United States for which the official figures have been prepared a system of personnel administration based on merit principles and scientific methods, governing the appointment, promotion, transfer, lay-off, removal and discipline of its officers and employees, and other incidents of City employment. Except as hereinafter specified, all appointments and promotions to positions in the City service shall be made on the basis of merit and fitness, to be ascertained by competitive examinations."

In Section 3 are to be found definitions of certain words and phrases used in the statute, those appropriate to this discussion being:

" 'Appointment' means the designation of a person, by due authority, to become an employee in a position, and his induction into employment in such position."

" 'Classified Service' means all offices and positions of trust or employment in the City Service, except those placed in the unclassified service by this Act."

" 'Employee' means a person legally occupying a position."

" 'Regular employee' means an employee who has been appointed to a position in the classified service in accordance with this Act after completing his working test period."

" 'City Service' or 'Civil Service of the City' means all offices and positions of trust or employment in the employ of the City, or any department, independent agency or other agency, board or commission thereof, or corporation organized for public purposes, of which fifty per cent. (50%) or more of the stock thereof is owned or controlled by the City, including persons employed by City or joint Federal and City agencies administering City and Federal relief and other funds, other than the military and naval service, irrespective of whether the pay for such offices and positions of trust or employment be paid out of the City Treasury, either in whole or in part, except those hereinafter excepted by the provisions of this Act."

Section 10 of the Act describes the unclassified and classified services as:

"(a) The unclassified service shall include the following positions:

"(1) The Mayor and other members of the Commission Council or other governing body of the city and all officers of all cities to which this Act applies, elected by popular vote and all persons appointed to vacancies occuring in such elective offices.

"(2) All heads of principal executive departments including the members of the Civil Service Commissions of all Cities to which this Act applies.

"(3) Members of the advisory boards and committees appointed by the mayors of all cities to which this Act applies, and serving without pay.

"(4) Members of boards, authorities or commissions appointed by the Commission Council, or other governing body of any city to which this Act applies.

"(5) Members and employees of the Board of the New Orleans City Park Improvement Association.

"(6) One principal assistant or deputy and one private secretary for the Mayor, the members of the Commission Council or other governing body of the city, each board or head of a department, except the Civil Service Commission.

"(7) Persons retained or employed by the Director for the purpose of conducting or assisting in the conduct of examinations under (d) of Section 8.

"(8) Officers, Secretaries and employees of the offices of the Mayor and City Attorney, Board of Liquidation City Debt and one member of the Louisiana Bar occupying a position in the City Service as legal counsel to any appointing authority.

"(9) All those employees and deputies of parochial offices and officials who have been placed in the unclassified Civil Service by sub-paragraph (14), as amended, of Section 10 of House Bill No. 484 relative to the State Department Civil Service.

"(b) The classified service shall comprise all other positions now existing or hereafter created in the City service."

The remaining provisions of the statute relate principally to the establishment of the Department of Civil Service, to the selection of those intrusted with its conduct, and to the rules, regulations, and procedure provided and necessary for its operation. Reference to some of these will be made hereinafter.

As above shown, Section 10(a) lists nine categories of positions excepted from the classified service, in not one of which are the positions of judges of the Recorders' Courts specifically mentioned; further, following that listing, Section 10 of the statute declares "(b) The classified service shall comprise all other positions now existing or hereafter created in the City service."

But, even though not so specifically mentioned, the positions of those judges might well come within the exceptions provided in Paragraph 4 of Section 10(a), reciting: "Members of boards, authorities or commissions appointed by the Commission Council, or other governing body of any city to which this Act applies." To say that the judges of the Recorders' Courts are members of judicial authorities appointed by the Commission Council seemingly would not be an incorrect statement. Often the

United States Supreme Court is referred to as the highest judicial authority of our nation, and this court as the highest judicial authority of Louisiana. Furthermore, the noun "authority" is defined in Webster's New International Dictionary, Second Edition, Unabridged, as: "b. (Chiefly in pl.) Government; the persons or the body exercising power or command; as, the local authorities of the States; the military authorities." And in the New Century Dictionary one of the definitions given is "the person or persons exercising power or control." Undeniably, the judges of the Recorders' Courts exercise judicial power, command, and control respecting matters within their jurisdiction.

Be that as it may, however, after our careful analysis and study of all of the provisions of Act No. 171 of 1940, made in the light of established rules for statutory interpretation, we are convinced that the Legislature did not intend that the judges of the Recorders' Courts of the City of New Orleans should be in the classified service as outlined in such statute; and, for that reason, we hold that they are not governed by the rules, regulations and procedure prescribed for City Civil Service.

█ █ Appropriate here is the following found in Re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464, 472:

" 'In the case of Church of Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226, and glaringly in the case of [Territory of] Hawaii v. Mankichi, 190

U.S. 197, 23 S.Ct. 787, 47 L.Ed. 1016, the Supreme Court of the U. S. laid down with great force and clearness the doctrine that in construing a statute it is the duty of the Court to seek out the intention of the Legislature and to give effect thereto in the same manner and to the same extent that it construes a will to determine the intention of the testator, or a contract to determine the intention of the parties thereto, and that no matter how broad and comprehensive may be the language employed by the statute, if it was not the intention of the Legislature to cover a particular case by that broad and comprehensive language, that then no effect should be given to it because the Legislature did not so intend. * * * But even if the language of the act is as broad as opponents contend, it is then the duty of the court to restrain its operation within narrower limits than its words import, if the Court is satisfied that their literal meaning would extend to cases which the legislature never intended to include.' "

That doctrine was affirmed in Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237, 239, in which we further quoted approvingly from Gremillion v. Louisiana Public Service Commission et al., 186 La. 295, 172 So. 163, as follows:

" 'In the construction of statutes absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable result. * * *' "

■ Also appropriate is the rule that although a title is no part of a statute it may be considered in determining the legislative intent where doubt exists. Succession of Baker, 129 La. 74, 55 So. 714, Ann.Cas.1912 D, 1181; Pritchard et al. v. Southern Insurance Company of Nashville, Tennessee, et al., 176 La. 187, 145 So. 374; Hughes v. Rudd, 178 La. 588, 152 So. 300; Schimpf v. Thomas, 204 La. 541, 15 So.2d 880.

When the title to Act No. 171 of 1940 is examined it will be noticed that there is nothing contained therein indicative of an intention that judges of Recorders' Courts, who are judicial officers, should be within civil service. To the contrary, throughout the title, reference is made to "personnel," to "employment," and to "employees," indicating that the act was intended to affect only those persons popularly and commonly termed "employees," in which class judicial officers are not generally considered.

In the body of the act, it is true, Section 1 speaks of "officers and employees," and subsections 6 and 28 of Section 3 refer to "all offices and positions of trust". But when these words are examined in their context and along with all of the other provisions of the statute and of its title, and considered in the light of Section 94 of Article VII of the Constitution of 1921 (relating to judges of the Recorders' Courts), it is clear that they do not embrace the judicial offices in question.

The statute, together with its title, contains numerous provisions respecting matters that are obviously inconsistent with the position of a judge of a Recorders' Court. For example:

It is the duty of the personnel director "To develop, in cooperation with appointing authorities and others, training and educational programs for employees in the City service." Section 8(a) (4).

" * * * Every person who, on the first day of July, 1942, is legally occupying, by permanent appointment thereto, a position placed by this Act in the classified service, shall be entitled to continue to occupy such position, without further tests of fitness for such employment, * * *." Section 11.

"The rate of pay of any employee may be decreased under the conditions and subject to the procedural requirements hereinafter prescribed in this Act. The pay of all positions in the classified service shall be determined with reference to the pay plan in effect and in accordance with the provisions of this Act, any provision of law appropriation for any different salary rate or mode of payment for any position to the contrary notwithstanding, and no employee in such service shall be paid any compensation for service as such except in accordance with the rate fixed under the provisions of this Act, and the rules adopted under its provisions. * * *." Section 16 (b).

"The rates of pay prescribed in the pay plan provided under the requirements of this Act shall be deemed to be the rates prescribed for full-time employment for

the regularly established working hours, * * *." Section 16(d).

"Vacancies in positions in the classified service may be filled by demotion, transfer, reinstatement, reemployment, promotion, original appointment, or temporary appointment, in accordance with the provisions of this Act and the rules. Preference shall be given to the methods named in the order in which they are so named in this Section, under the conditions and subject to the restrictions and limitations set forth in the rules." Section 17(a).

Every person appointed to a position in the classified service after certification of his name from an employment list shall be tested by a working test while occupying such position. * * *" Section 25(a).

" * * * Each employee shall be notified of his serivce ratings from period to period with a view of his being afforded opportunity for correcting his obvious weaknesses. The reports and records of the ratings of each employee may be inspected by him or his duly authorized representative, by his appointing authority, and, in the discretion of the Director, by any other appointing authority who is considering a transfer of the employee to his own jurisdiction. * * *" Section 29(b).

Further, it will be recalled that Article VII, Section 94 of the Constitution of 1921 asserts that the judges of the Recorders' Courts shall be qualified electors and not less than 25 years of age. Yet, Section 20 of the statute provides that " * * *

Whenever, after diligent effort, it has been found impracticable to obtain a sufficient number of eligibles who are citizens and if over twenty-one (21) years of age are qualified voters of the City, for positions of any class, persons otherwise qualified who are not citizens may be admitted to the tests and may become eligible for appointment and be appointed to such positions subject to all other provisions of this Act. * * *" Section 24 states that, " * * * provided that preferences in certifications shall be given to eligibles who are residents and if over twenty-one (21) years of age are qualified voters of the city, but in any case where there are not enough eligibles who are such residents, other eligibles who are non-residents of the city may be certified. * * *" And Section 26(1) declares that " * * * When a vacancy is to be filled in a position of a class for which there are no eligibles available for certification, the appointing authority, with the prior approval of the Director, may make a provisional appointment of any person whom he deems qualified. * * *" Surely, by these statutory provisions the Legislature did not intend to contravene the constitutional mandate respecting the age and residential qualifications for an eligible Recorders' Court judge. In this connection we notice that in enacting them it did not also stipulate that the constitutional qualifications should govern in the event of a conflict, just as it cared for a conflicting situation when it provided in Section 45:

" * * * Wherever the provisions of any law of the United States, or of any rule, order or regulation of any Federal Agency or authority, providing or administering Federal funds for use in Louisiana, either directly or indirectly or as a grant-in-aid, or to be matched or otherwise, impose other or higher, civil service or merit standards or different classifications than are required by the provisions of this Act, then the provisions of such laws, classifications, rules or regulations of the United States or any Federal Agency shall be adopted by the Commission as rules and regulations of the Commission, and shall govern the class of employment and employees affected thereby, anything in this Act to the contrary notwithstanding."

▇ When, therefore, all of the provisions of Act No. 171 of 1940 are considered together, properly analyzed, and construed with a view of reaching a reasonable result, the conclusion is inescapable that there was no legislative intent to place the judges of the Recorders' Courts within the City Civil Service Law, a conclusion that is fortified by the well recognized doctrine, as announced in 10 American Jurisprudence verbo Civil Service, Section 13, that the scope of Civil Service laws is generally limited so as to exclude from their operation judicial officers.

For the reasons assigned the judgment of the district court is reversed and set aside, and there is now judgment rejecting the demands of relator and dismissing this suit at his costs.