AYRES, Judge
(dissenting):
For reasons hereinafter assigned, I respectfully dissent from the majority opinion and decree.
These are expropriation proceedings wherein properties of defendants are sought to be taken as declared in plaintiff’s petitions “for the purpose of the Monroe Floodwall Gap” project.
The properties of defendants, including the improvements thereon, are located on the east, or left, descending bank of the Ouachita River and face South Grand Street across, if not directly, at least obliquely, from the Ouachita Parish Courthouse. On these properties and in the buildings located thereon, the owners operate their respective businesses. For instance, the defendant Gilbert Faulk owns and operates a real estate business; John Howard Carroll owns and operates the Carroll Supply Company, a floral supply house; and T. D. L. Corporation owns an office building occupied by the law firm of Theus, Grisham, Davis & Leigh.
By means of exceptions of no cause and of no right of action and motions for summary judgments, relators herein, defendants in the executory proceedings, placed at issue in each action, on legal and constitutional grounds, plaintiff’s authority to exercise the rights of expropriation which is the subject of these actions. Defendants also timely filed, subject to the special defenses urged in the aforesaid peremptory exceptions and motions for summary judgments, answers to plaintiff’s suits in order to preserve their rights under these defenses.
Also placed at issue were the irregularity and invalidity of an election held on October 28, 1969, purportedly to approve plans or projects submitted by the plaintiff-agency.
The trial court, in due course after hearing, rejected defendants’ special defenses, overruled their exceptions of no cause and of no right of action, and denied their motions for summary judgments. The way was thus cleared for a trial of these actions on their merits and for the entry of final judgments of expropriation.
Under the provisions of LSA-R.S. 19:13,-defendants are denied a right of suspensive appeal from final judgments of expropriation. Thus, upon payment to the owners of the amounts awarded by the trial court, or by the deposit thereof in the registry of the court, plaintiff is entitled to the ownership of the properties in the same manner as it would have under a voluntary conveyance. Inasmuch as it appeared the status quo could not be maintained during devolu-tive appeals, pending which plaintiff stood ready and eager to take defendants’ properties and demolish the improvements thereon, without a final determination in the appellate courts of the right and authority of plaintiff to expropriate the properties for the purpose for which they were sought to be taken, this court issued writs of certiorari, prohibition, and mandamus for the purpose of determining the right and authority of the plaintiff to expropriate these properties.
The issues involved and with which we are now concerned are purely legal in character and must be determined from appropriate constitutional and statutory authority. No amount of evidence which may be introduced on the remands, as decreed by the majority, could affect whatever authority or lack of authority plaintiff has under the law. Moreover, such remands in a trial of these cases on their merits would result, as noted above, in de *587 fendants’ deprivation of their properties before plaintiff’s authority or right to take the properties is finally determined on appeal. Thus, defendants would again be placed in the dilemma of being forced to rely upon ineffective devolutive appeals and consequently would suffer irreparable injury, damage, and the loss of their properties for which they could never be adequately compensated.
These are classical cases, evidencing the need, in the interest of justice, for a determination of plaintiff’s right, power, and authority to expropriate and take defendants’ properties prior to the taking after which, through no right of a suspensive appeal, they would have no effective means to oppose the action.
Plaintiff, Monroe Redevelopment Agency, was created under the authority of Act 215 of 1968 and relies upon the provisions of that statute, as it must, for authority to expropriate defendants’ properties “for the purpose of the Monroe Floodwall Gap” project. The statute, in my opinion, does not confer any such authority. The title of the statute, insofar as applicable, recites :
“To allow, by local option, the formulation of a program by the governing body of Monroe, Louisiana, for the utilization of appropriate private and public resources to eliminate and prevent the development or spread of slums; to allow the creation and organization of a Redevelopment Agency; to allow the rehabilitation, clearance, and redevelopment of slums and blighted areas in Monroe, Louisiana, . . ..”
In pertinent part, Louisiana Constitution Art. 3, § 16 provides that:
“Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.”
The title of the statute as quoted herein-above is wholly deficient in indicating any purpose or intention of the Legislature or of the statute to authorize the taking of property for which the expropriation of these properties is sought, that is, for floodwall purposes. It is not contended that defendants’ properties are in or comprise a slum or blighted area in the City of Monroe. There is no relationship between slum areas and their clearance and the purpose to take defendants’ properties for the use of a floodwall. Under Louisiana law, a statutory text broader than its title is invalid. More accurately stated, the provisions of the body of an enactment broader than its title are invalid. Continental Casualty Co. v. Associated Pipe & Supply Co., 447 F.2d 1041, 1054 (5 Cir., 1971) ; State ex rel. Thompson v. Department of Civil Service, 214 La. 683, 38 So.2d 385, 388-389 (1948); State v. Cotton, 128 La. 749, 55 So. 342 (1911).
In the Thompson case, the Supreme Court pointed out:
“Also appropriate is the rule that although a title is no part of a statute it may be considered in determining the legislative intent where doubt exists. Succession of Baker, 129 La. 74, 55 So. 714, Ann.Cas.1912D, 1181; Pritchard et al. v. Southern Insurance Company of Nashville, Tennessee, et al., 176 La. 187, 145 So. 374; Hughes v. Rudd, 178 La. 588, 152 So. 300; Schimpf v. Thomas, 204 La. 541, 15 So.2d 880.
“When the title to Act No. 171 of 1940 is examined it will be noticed that there is nothing contained therein indicative of an intention that judges of Recorders’ Courts, who are judicial officers, should be within civil service. To the contrary, throughout the title, reference is made to ‘personnel,’ to ‘employment,’ and to ‘employees,’ indicating that the act was intended to affect only those persons popularly and commonly termed ‘employees’, in which class judicial officers are not generally considered.
“in the body of the act, it is true, Section 1 speaks of ‘officers and employees,’ and subsections 6 and 28 of Section 3 re^ fer to ‘all offices and positions of trust’. *588 But when these words are examined in their context and along with all of the other provisions of the statute and of its title, and considered in the light of Section 94 of Article VII of the Constitution of 1921 (relating to judges of the Recorders’ Courts), it is clear that they do not embrace the judicial offices in question.” (Emphasis supplied.)
Therefore, the provisions contained in the body of the statute, which would tend to authorize this taking pf defendants’ properties, exceed or go beyond the title of the statute and, hence, are invalid.
Moreover, it appears appropriate to point out that an election by the electorate of Monroe was held on June 10, 1969, in which the precise project, that is, the taking of defendants’ properties for the use of a floodwall gap project, was defeated. Notwithstanding this defeat, a subsequent election was held on October 28, 1969, as aforesaid, less than five months following the defeat of the project with which we are now concerned. The defeated project was not included as one of the propositions lastly voted upon. Nevertheless, plaintiff-agency reverted to and now seeks to carry out the defeated project.
Further, the election of October 28, 1969, was irregular, invalid, null, and void. Under Section 7(c) of the statute (Act 215 of 1968), it is declared that:
“. . . Each redevelopment plan or project proposed or caused to be proposed by the agency in compliance with this act shall be approved by the qualified electorate of the municipality voting at an election called for the purpose of approving the plan or project; . . . (Emphasis supplied.)
The proposition submitted in the election is contained in this language:
“Shall the Commission Council of the City of Monroe, Louisiana, acting as the Redevelopment Agency of said City, undertake the redevelopment plan or project approved by it at a meeting held on September 23, 1969, which plan or project is entitled ‘Monroe Neighborhood Redevelopment Program for Downtown-Washington Community and Bryant’s Addition area’, which plan or project provides for elimination of substandard housing by relocation of occupants of such housing and acquisition and demolition thereof and resale of cleared sites for new housing or by promotion of rehabilitation of such housing and providing all possible assistance to the owners of such property, elimination of all substandard nonresidential structures by acquisition and demolition of such structures and resale of cleared sites for new uses or by promotion of rehabilitation of such substandard structures and provisions of all possible assistance and construction of streets, sidewalks, parks, pedestrian overpasses, drainage facilities, cemeteries, flood protection facilities, a public marina, recreational facilities and playgrounds and other public improvements and acquisition of land for expansion of schools and recreation centers throughout the redevelopment area, copy of which plan or project is on file in the office of the Secretary-Treasurer of the City of Monroe ; and in connection with such plan or project to apply for and receive advances from the Federal government or other bodies for the carrying out of such plan or project, all as authorized by the Constitution and laws of Louisiana, and, in particular, by the provisions of Louisiana Act 215 of 1968?”
The great number and diversity of the projects contemplated by this proposition are disclosed by a casual reading. It appears that no less than a dozen, or more, projects for six separate areas are contained in the proposition. Included are projects for the elimination of substandard housing, the elimination of substandard nonresidential structures, the construction of streets, sidewalks, parks, pedestrian overpasses, drainage facilities, cemeteries, *589 flood-protection facilities, a public marina, recreational facilities, and expansion of schools. The proposition also called for slum clearance through the elimination of substandard housing and nonresidential structures in several different, unrelated and noncontiguous areas. Nevertheless and despite the provisions of the statute quoted to the contrary, all of these projects were submitted in globo to the electorate which required a single vote — either yea or nay — on the whole of the projects submitted for approval. The electorate was provided with no choice so that he or she might have voted yea on some of the projects and nay on others. It was a single-shot proposition; either take it as a whole or reject it as a whole.
Although opinions of an attorney general are not necessarily accorded the effect of law, an opinion rendered by Carroll Buck, long an assistant attorney general under several administrations, is worthy of consideration as coming from one of vast legal experience. Responding to an inquiry by Senator William D. Brown, sponsor of Act 215 of 1968, Mr. Buck made the following pertinent observations with respect to this particular subject matter:
“The proposition submitted for the election on October 28, does not afford to any voter an opportunity of doing more than voting for or against the entire redevelopment plan, or in other words, no opportunity is given for a voter to vote for one particular plan or project and to vote against another.
“. . . under the provisions of Section 7(c) it is required that each redevelopment plan or project shall be approved by the qualified electorate, and it is our opinion that the proposition submitted does not provide any means whatsoever for each plan or project to be approved or disapproved, but on the contrary, the whole plan or project, consisting of many separate unrelated plans or projects mtist be either voted for or against, without an opportunity of a voter to vote for or against any one plan or project. "It is our opinion that the proposition submitted for the above election does not conform with the requirement of Section 7(c) of Act 215, and does not afford the electorate an opportunity to vote upon the proposition in accordance vuith said Section 7(c).
“It is our further opinion that the proposition as submitted is patently tmreasona-ble and arbitrary in not affording an opportunity of the electorate intelligently to vote upon each project or plan which might affect him personally. * * * ” (Emphasis supplied.)
Mr. Buck’s views are in accord with decisions of our Supreme Court as expressed in the cases of Tolson et al. v. Police Jury of St. Tammany Parish et al., 119 La. 215, 43 So. 1011 (1907), and State ex rel. Bussie et al. v. Fant et al., 216 La. 58, 43 So.2d 217 (1949).
The Supreme Court observed in the Tol-son case that such a proposition, requiring a single vote for or against all multiple unrelated projects, does not allow a voter free exercise of his judgment. Such a mode of procedure, known in ordinary legislation as “logrolling,” was utterly condemned. The election was accordingly declared null. In a syllabus prepared by the court, it was stated:
“. . . the proposition of the particular tax must be submitted singly and on its own merits to the voters, and not so coupled with some other proposition that the voters cannot vote upon either proposition singly, but must vote for, or else against, both.”
In accord with the decision in the Tolson case, the Supreme Court, more recently, in State v. Fant, supra, refused a mandamus to compel the City of Shreveport to submit to the electorate an ordinance raising the salaries of the members of the police department and of the fire department. The voter on such a dual proposition, calling for a single vote, would have been afforded no way of voting for one proposition *590 and against the other. The court held that both such an election and any ordinance based thereon would be invalid and null and void.
The election of October 28, 1969, held in connection with these matters, is likewise null and void by the requirement that the electorate vote as a single-shot proposition on a great number of different, unrelated projects as diverse as cemeteries, marinas, and slum clearances in as many as six divergent and noncontiguous areas of the City of Monroe.
The legal reasoning, philosophy, and basic principles of due process behind the prohibition of calling for a vote on multiple proposals was expressed by the Louisiana Supreme Court in State v. Fant, supra, as follows:
“The Supreme Court of Kansas in Lewis v. Commissioners of Bourbon County, 12 Kan. 186, 213, in discussing the submission to the electorate of a dual proposition to be accepted or rejected, made the following well reasoned statement, which is pertinent here: ‘ * * * It may be conceded that two or more questions may be submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together, to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined, and the real will of the people overslaughed. By the combination an unpopular measure may be tacked on to one that is popular, and carried through on the strength of the latter. A necessary matter may be made to carry with it some private speculation for the benefit of a few. Things odious and wrong in themselves may receive the popular approval, because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections. That aims to secure freedom of choice, not merely between parties, but also in respect to every office to be filled, and every measure to be determined. * * * (Emphasis supplied.)
43 So.2d 217, 218-219.
Our Supreme Court, in the Fant case, supra, in quoting from the North Dakota case of Stern v. City of Fargo et al., 18 N.D. 289, 122 N.W. 403, 408, 26 L.R.A.,N.S., 665, stated:
“. . . The authorities are nearly unanimous to the effect that a proceeding by which two questions are submitted, when such questions or their subjects and purposes are not naturally related or connected, is invalid, and renders any election at which such questions have been so submitted invalid.”
See, also, the authorities therein cited.
The Supreme Court of Georgia, in the case of Rea v. City of La Fayette, 130 Ga. 771, 61 S.E. 707, 708 (1908), properly observed :
“ . . . There may be in a given community such a strong sentiment in favor of incurring a public debt for a particular purpose — for instance, as providing adequate and suitable accommodations for the public schools — that by combining a proposition of this popular character with one to create a public debt for a wholly different purpose, which would not as an independent measure commend itself to the unbiased judgment of the voters, the unpopular proposition may obtain the requisite number of votes to insure its adoption. On the other hand, the sentiment against the last-mentioned proposition, might be so strong as to cause the voters to defeat the one in favor of the public schools, although, if standing alone, it would have received their hearty support. To present both propositions in a single submission, thus rendering the success of the one dependent upon the success of the other, or the defeat of the one de *591 pendent upon the defeat of the other, is clearly unfair to the voters, and not at all conducive to a free and untrammeled expression of public sentiment as to the merits of either. And, when the number of separate and distinct questions to be combined and embraced in a single submission is increased, there is a corresponding increase in the unfairness of the mode of submission and of the chances that no true expression of the will of the people can be obtained. Another evil which might result from holding such a practice to be lawful is that a popular and meritorious measure might be purposely foredoomed to defeat by making its success dependent upon the adoption of some other measure known to be obnoxious to the people.”
The Supreme Court of Mississippi similarly stated the principles of law here involved in the case of In re Validation Bonds, City of Moss Point, 170 Miss. 886, 156 So. 516 (1934), in this language:
“The rule seems to be well established, with but little, if any, dissent therefrom, that, where an election is required to be held on the question of incurring municipal indebtedness, two or more propositions, if separate and distinct in their character, cannot be combined into one and submitted as a single question, but the voters must have the opportunity to vote separately on each of the separate and distinct propositions, unless the particular statute under which the election is held expressly or by clear implication allows a departure from the rule. . This rule is founded upon the general policy or principle, which pervades the laws of nearly all our states, that elections must be conducted by such means and in such manner as to ascertain, so far as practicable, the true and untrammeled will of the electorate' — -a policy or principle which is held aloft and is sanctioned in a hundred ways throughout the laws of this state. The courts call attention to the fact that, if distinct and separate objects were permitted to be submitted in combination as a single proposition, an objectionable, or even an odious, object might be carried because thus connected with another of such compelling merit as to force adoption, while, on the other hand, a meritorious and essential object might be defeated by its combination as a single proposition with an unpopular and undesired object, so that by such combination of separate and unrelated objects the true and untrammeled will of the electorate is not expressed or ascertained.” (Emphasis supplied.)
The decision and opinion of the United States Supreme Court in the case of Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), relied on by plaintiff-agency, are entirely unresponsive to the defenses of the property owners in the case at bar, and are no way in point. That case involved the District of Columbia Redevelopment Act of 1945, under which the redevelopment agency undertook to condemn and take by eminent domain (expropriation) an admitted slum area for slum clearance.
The Berman case and its holding are totally irrelevant to the case at bar. The agency in the District of Columbia had statutory authority to condemn for slum clearance, as has the agency in the case at bar. But the difference is that the District of Columbia agency was taking for slum clearance; whereas, here the Monroe agency seeks to take for flood control, an unauthorized purpose. Furthermore, in Berman there was no statutory requirement of approval of any project by the electorate as required by the Louisiana Act. Plaintiff can derive no comfort from the Berman case because the objections urged here of the nullity of the taking for want of authority and the nullity of the election were not at issue in that case. Defendants here contest the entire flood-wall project as null and void because of nullity of the election and the absence of any authority in the agency to expropriate for floodwall or flood-control purposes.
*592 There can be no question of the nullity of the election of October 28, 1969, on the basis that these expropriations are sought to be forced on defendants and their properties. To permit to the Monroe Redevelopment Agency the forced taking of the properties of these defendants, with no legal authority in the agency to do so, and on the sanction of a totally null and void election, would constitute the clearest denial of due process of law, in contravention of the Fourteenth Amendment to the United States Constitution and Art. 1, -§ 2 of the Constitution of Louisiana. Defendants’ motions and exceptions should therefore have been, in my opinion, sustained.
No improper motive is impugned in this dissent to the Monroe Redevelopment Agency nor to its officers or other personnel. However, it must be remembered that one of the great purposes to be served by our fundamental laws, as well as the mandatory requirement óf the statute creating plaintiff-agency, is to guard the people against the dangers of good intentions. Good intentions have been and will always be pleaded for every assumption of power. There are men in all ages who mean to govern well, but they mean to govern. They promise to be good masters, but, nevertheless, they mean to be masters. Through obviously misplaced zeal, such seemingly are the tenacious determinations manifested by the agency’s persistence in carrying out a project rejected by the electorate and unauthorized by law.